FRIEDMAN, KEILER & CO. v. B. H. PETERS ET AL.

Delivered January 13, 1898.

**1. Guaranty—Continuing, When.**

A letter stating that the writer guarantees the payment of the sendee's account with a specified person to a specified amount, and requests that such sendee shall state terms of sale on each invoice, and let him know at once if an invoice is not met at maturity, is a continuing guaranty.

**2. Same—Acceptance.**

No formal notice of the acceptance of a guaranty is required, but it is sufficient if the guarantee acts thereon and the guarantor receives information of such action within a reasonable time.        .

**3. Fraudulent Representation—Opinion Is Not.**

A representation by one person that he thinks another specified person is able to be made responsible for goods which he may order from the person to whom the representation is made, is a mere expression of an opinion, which will not render the one making it liable to the one to whom it is made, if such other person fails to pay for the goods ordered by him.

**4. Warehousemen—Delivery of Receipt Transfers Goods.**

The transfer of a warehouse receipt by a debtor to his creditor, with the understanding that the latter shall hold the articles covered by such receipt as security for the debt, operates as a delivery of such articles, and places them beyond the control of the debtor, as between the transferee and the warehouseman, without the necessity of notice of the transfer by the warehouseman.

**5. Collateral Security Does Not Release Guarantor.**

A guarantor is not released from liability on his guaranty simply because of a transfer to the guarantee by the person whose debt is guaranteed, of a warehouse receipt for articles sufficient in value to pay the debt, and the commencement by the guarantee of an action against the warehouseman to recover such articles.

APPEAL from the County Court of Galveston. Tried below before Hon. M. M. MANN.        . .    .

*William B. Lockhart,* for appellant.

*Jas. B. and Chas. J. Stubbs,* for appellees.        °        .    .

GARRETT, CHIEF JUSTICE.—This action was brought by the appellants against the appellees, Robert Shook and B. H. Peters, for recovery upon certain acceptances given by Shook for the value of several invoices of whiskey sold to him by the appellants, and upon an alleged guaranty given by Peters for a part of the account, as well as for the value of certain other invoices sold to Shook upon the alleged fraudulent misrepresentation of Peters as to Shook's solvency, and also for the value of five barrels of whisky which the appellants alleged that the appellee, Shook, had pledged with them as security for certain invoices purchased by him and which afterwards came into the possession of Peters. Shook suffered judgment by default. Peters pleaded that the guaranty had been exhausted by the purchase of and payment for more goods than the amount of the guaranty; and that he had never been notified by the appellants of their acceptance of the guaranty, and was not therefore bound by it; that the appellants had not complied with the form and conditions of the guaranty; denied all allegations of fraudulent misrepresentation as to the solvency of Shook, and alleged that the five barrels of whisky which appellants claimed had been pledged to them by Shook were sold and delivered to him by Shook without any knowledge on his part of the appellant's claim. The case was tried by a jury and resulted in a verdict and judgment in favor of Peters, but the appellants had judgment against Shook by default. The evidence showed that on August 10, 1893, and for some time prior thereto and afterwards, Robert Shook was engaged in business as a retail liquor dealer. On that date he had ordered two barrels of whisky from appellants, the shipment of which was held up on account of Shook's financial standing. Shook proposed to appellants to secure them by the guaranty of Peters, and at the request of Shook the appellee, B. H. Peters, addressed the following letter to the appellants:

"GALVESTON, TEX., Aug. 10, 1893.
"Messrs. Friedman, Keiler & Co., Paducah, Ky.:
"Gentlemen—Please take notice that I guarantee the payment of your account with Robert Shook of this city to the amount of four hundred dollars ($400.00). At the same time I would kindly ask you to state terms of sale on each invoice, and to let me know at once if it should happen that an invoice is not met at maturity. Your Mr. Keiler has been here a few days ago and Mr. Shook ordered two barrels of whisky from him, which was afterwards refused on account of Mr. Shook's financial standing. Please forward same now at your earliest convenience and much oblige, yours truly,
[Signed]                                    "B. H. PETERS."

After this the appellants shipped to Shook the whisky that was then being held and other invoices subsequently purchased, amounting to more than $400, exclusive of those for which this suit is brought and for which Shook paid them. On March 24 and on April 16, 1894, appellants

sold Shook the bills for which the four acceptances first mentioned in the petition were executed.   On May 11, 1894, Peters wrote to appellants the following letter:

"GALVESTON, TEX., May 11, 1894.
"Messrs. Friedman, Keiler & Co., Paducah, Ky.:
    "Gentlemen—Please take notice that I have sold back the business to Mr. Robert Shook, and therefore do not want to be responsible for any more goods which he may buy hereafter.   Mr. Shook has paid back to me most of the money which he owed me, and I think he is able to be responsible for goods which he may order.   Please acknowledge receipt of this and much oblige, yours truly,
            [Signed]                              "B. H. PETERS "

    To this letter the appellants replied acknowledging the receipt thereof, and stating that they would release appellee from all responsibility on any goods shipped to Robert Shook after that date.   The appellee had previously, on April 13, 1892, loaned Shook the sum of $3000 for the purpose of buying out a partner in the business in which he was engaged.   The form given to the transaction was a sale by Shook and his partner to Peters, in consideration of $3000 for the Cotton Exchange Saloon business, and on the same day Peters sold the property back to Shook in consideration of $3000 evidenced by notes.   Again, on May 18, 1893, Shook sold the property to Peters for the above mentioned notes, $3000, and on April 4, 1894, Peters reconveyed it to Shook for the same amount and took a deed of trust therefor on the same day to secure the purchase money.   Finally, on August 8, 1894, Shook made an absolute conveyance of the property to Peters for the sum of $3000.   No money passed in any of these transactions except in the original one in which Peters furnished the money to buy out Shook's partner.   After the letter from Peters revoking his guaranty, appellants sold two other invoices of goods to Shook for which the remaining acceptances sued on were made.   About August 1, 1894, just prior to the final sale by Shook to Peters, one of the appellees, John W. Keiler, was pressing Shook for the payment of his due acceptances, and being unable to make payment, Shook proposed to give him as security five barrels of whisky which he owned and which were held in a bonded warehouse.   Keiler agreed to accept the security and indulge him, whereupon Shook, by his written endorsement, transferred to the appellants his warehouse receipt, which was as follows:

"Franklin County Distillery Co.,
            "Julius Kessler & Co., Controllers.
"No. 1312.            LYNCHBURG, OHIO, October 20, 1892.
    "Received and stored in the United States bonded warehouse of Distillery No. 13, First District, Ohio, for account and subject to the order of Robert Shook, five barrels Franklin County Rye whisky, deliverable

only on return of this (not negotiable) receipt, properly indorsed, and on payment of government tax, charges, and all moneys due thereon. Storage at the owner's risk of fires, shrinkage, or natural decay."

[After reciting the serial numbers of the barrels, number of gallons, proof, date of entering bond, and number of stamps, by whom gauged, etc., it was signed.]

                        "JULIUS KESSLER & Co., Sole Comptrollers."

The court below construed the guaranty as a continuing guaranty, and instructed the jury, if they believed from the evidence that the goods described in the invoices of March 24 and April 16, 1894, were sold by the appellants to Shook upon the faith of the guaranty, they should find in their favor for the amount of the acceptances given therefor. Appellants complain of the verdict as contrary to the evidence, because the uncontradicted evidence showed that the goods were sold upon the faith of the guaranty. This contention is true, because the testimony of J. W. Keiler was that the goods were sold upon the faith of the guaranty, and it was nowhere contradicted; but the appellee Peters contends that the guarantee was not absolute and unconditional, but only a proposal to guaranty, and that no notice was ever given to him of its acceptance by appellants, and therefore he was not bound by it, and, the evidence showing that there was no notice and that no other conclusion could have been reached, the verdict should not be disturbed. Appellee's letter of May 11, 1894, taken in connection with other facts in the case, such as his relations to Shook and the property, and the testimony of Shook that he had proposed the appellee as security and had told appellee all about the matter when the letter of guaranty was written, all tend to show that appellee must have had notice that the guaranty was accepted and acted upon by the appellants, and was certainly sufficient to have that issue submitted to the jury. The court below properly construed the guaranty as a continuing guaranty. There is no limitation in the letter of guaranty, except as to amount; and the request that the terms of sale should be stated on each invoice, and that the guarantor should be notified if the invoices were not met at maturity, show very clearly that further sales were contemplated after the shipment of the two barrels of whisky mentioned in the letter which had been already purchased. But from the face of the letter it would seem that notice of its acceptance would be required in order to hold the guarantor. It was, however, for the purpose of securing the delivery of the whisky, then being held, in response to a request for security made by appellants, and after the matter had been fully explained to Peters by Shook, which would tend to show an absolute guaranty. The courts differ widely in the construction of guaranties, and base the construction in each case largely upon the facts attending the transaction and explaining the same. There was, at any rate, evidence in this case strongly tending to show notice which required the matter to be submitted to the jury, and a verdict could not be sustained on the ground that no notice was given.

No formal notice of the acceptance of a guaranty is required. If the guarantee had acted thereon and the guarantor receives information of such action within a reasonable time, it will be sufficient notice; and notice may be inferred from circumstances tending to show that the guarantor must have known that his guaranty had been accepted and acted upon. The only evidence to show a fraudulent misrepresentation on the part of the appellee Peters to secure credit for the last bill sold to Shook by the appellants, is the letter above set out. The testimony shows that the representation that Shook had paid Peters the most of what he owed him was true in fact, and the statement that the latter thought that Shook would be able to be responsible for goods which he might order was only the expression of an opinion. The evidence was not sufficient to raise such an issue, and hence insufficient to authorize the submission thereof to the jury and the refusal of the court to submit it was not error. But the action of the court in instructing the jury that the appellant could not hold the appellee Peters liable for the value of the five barrels of whisky held in bond by Julius Kessler & Co., and covered by the warehouse receipt transferred by Robert Shook to the appellants, was error. It has been very generally held that the transfer and delivery of a warehouse receipt to a purchaser or pledgee of the articles stored in the warehouse is a symbolical delivery of the property. The transfer of the receipt or certificate by Shook to the appellants, with the understanding that they should hold the whisky for which it was given for security for his indebtedness to them, operated as a delivery to them of the whisky in the bonded warehouse for that purpose, and placed the same beyond the control of Shook as between appellants and the warehousemen without the necessity of notice by the warehousemen of the transfer. Jones on Pledges, secs. 280, et seq.; Id., 320; Gibson v. Stevens, 8 How., 384.

Peters seeks to avoid the effect of this, first, by the contention that the evidence showed that there was no intention to hypothecate the whisky with appellants, but that it was only intrusted with them for the purpose of sale; also that he was an innocent purchaser of the whisky, because he had no notice of the transfer. The evidence of J. W. Keiler is positive to the effect that he took the transfer of the certificate as a pledge of the whisky to secure appellants' account, and not for the purpose only of sale. This in connection with the other evidence required the submission of the issue to the jury. The question whether Peters could have been at all a purchaser in good faith so as to defeat the title of appellants has not been raised, and it is not necessary to decide it, for even if it should be conceded that if he was a purchaser of the whisky without notice of the claim of appellants and for a valuable consideration he would take a good title thereto, still there is evidence in the record tending to show, if not conclusively showing, that he had notice or was in possession of facts that should have put him upon notice that the whisky was no longer under the control of or in the possession of Shook. It was also shown by the evidence that the whisky was not sold to Peters

until about three days after the sale of the other property was made, and it is also doubtful if he paid a valuable consideration therefor, since he took it in the payment of a prior indebtedness, and really advanced nothing in payment thereof, for he only paid the tax thereon, which was not a part of the consideration. He bought of Shook five barrels of whisky in a United States bonded warehouse for which he paid nothing. If Peters was not a bona fide purchaser of this whisky, it will not be contended that he acquired a better title thereto than the pledgee holding the certificate. The least the court could have done should have been to submit the question to the jury. We have not considered the question of want of notice to the warehouse of the transfer of the certificate upon the rights of Peters, because it has not been raised, and if Peters was not a purchaser in good faith otherwise, it would be immaterial. There is no question here of the liability of the warehouseman.

Appellants also complain of the action of the court in requiring the witness J. W. Keiler to answer the following interrogatory and the admisssion of his answer thereto, to wit:

Cross-interrogatory 13: "Is it not true that you have made claim against Julius Kessler & Co. for the whisky, or its value, described in said receipt, and is it not true that that question is pending between you and them, and have you not a remedy against them if they wrongfully sold and delivered the whisky to anyone else without your consent; and if you have such remedy, then did not Kessler & Co. and Shook have the right to sell said whisky to Mr. Peters, or anyone else, who would pay the required amount therefor; and is it not true that the receipt which you had possession of was non-negotiable, and that Kessler & Co. delivered the whisky without regard to that receipt, observing only the order of Shook, who had bought the same from them originally?"

Answer: "I do not care to be drawn into a discussion of the legal questions involved in this interrogatory, but leave that to the court to determine. Our firm would not, of course, release Mr. Peters simply because they had the legal recourse against Kessler & Co., and will hold them both until our claim is satisfied in full."

The action of the court was error, and upon another trial of the case the court should not allow the interrogatory and answer to be read to the jury.

The judgment of the court below will be reversed, and the cause remanded for another trial.

*Reversed and remanded.*