STAMFORD COMPRESS COMPANY v. FT. WORTH NATIONAL BANK.

No. 2191. Decided February 21, 1912.

**1.—Warehouseman—Receipt for Goods—Assignment—Delivery to Assignor.**

Under our statutes governing the transfer of non-negotiable instruments (Rev. Stats., arts. 308, 309), the assignee of a warehouseman's receipt for goods can not, unless he has notified such bailee of the transfer, maintain action against him after he has, in ignorance thereof, delivered the goods to the party depositing them and to whom his receipt was issued. (Pp. 45-48.)

**2.—Same.**

The assignment of a warehouseman's receipt for goods transfers the property therein to the assignee, but does not effect a change in the contract between the bailor and bailee, without notice to the latter of the change in ownership. The latter remains bound to deliver to the former; and, though the receipt specifies that it must be returned on delivery, a delivery without its production, on the bailee's representation that the receipt was among his papers and would be surrendered, constituted a defense to an action for the property or its value by the assignee of whose rights the bailee had no notice. Mr. Justice Ramsey dissenting. (P. 46.)

**3.—Same—Cases Distinguished, etc.**

Swearingen v. Buckley, 1 Texas U. C., 421, approved. Union Trust Co. v. Wilson, 198 U. S., 530; Friedman v. Peters, 18 Texas Civ. App., 11; National Bank of Cleburne v. Citizens Bank, 41 Texas Civ. App., 535; Gibson v. Stevens, 8 How., 384; Babcock v. Peoples Sav. Bank, 118 Ind., 212; Planters Rice Mill v. Bank, 78 Ga., 574; Saurez v. Steamship Co., 1 Wood, C. C., 96; Stewart v. Gwynne & Co., 9 Lea, 104; Quick v. Milligan, 108 Ind., 419; Bank v. Bates, 1 Fed., 702; Cowdrey v. Vandenburg, 101 U. S., 572; distinguished. (Pp. 46, 48, 49.)

Error to the Court of Civil Appeals, Second District, in an appeal from Taylor County.

The Bank sued the Compress Co. and had judgment. Defendant appealed and obtained writ of error on affirmance.

*Hardwicke & Hardwicke,* and *Davenport & Davenport,* for plaintiff in error.—The warehouseman having no notice actual or constructive of the rights or claims of third parties to such property or to such tickets, then such third parties cannot recover from the warehouseman on account of his having delivered the property to the depositor to whom the ticket or receipt was issued. Sanger v. Travis County Farmers' Alliance, 37 Texas Civ. App., 321; Railway Co. v. Eldridge, 35 Texas Civ. App., 467; Insurance Co. v. Coffee, 61 Texas, 287; 5 Cyc., 211, 212; 4 Cyc., 32-34, 86.

If, under any state of facts, transfer of the ticket would give plaintiff any right or ground of action, yet same on its face showing it was non-negotiable, the plaintiff not giving notice of such transfer or assignment to defendant and defendant having no notice thereof, the same in the hands of plaintiff was subject to every defense and discount against same which it would have been subjected to in the hands of Rives, the party to whom the receipt was originally issued. Rev. Stat., 308, art. 5, 309; National Oil & C. Co. v. Teel, 95 Texas,

586; Land Co. v. Traction Co., 95 Texas, 252; Railway Co. v. Carter, 95 Texas, 461.

The burden of proof was on plaintiff to show that it gave notice to defendant of its rights by reason of the claimed assignment or transfer and having failed to so do and defendant having acted on the representation of Rives that he yet owned and held the tickets, plaintiff could not recover. Swearingen v. Buckley, 1 Posey, U. C., 421.

When the parties to a contract stipulate therein that it is non-negotiable such stipulation controls and an assignee in face of such stipulation acquires no rights against any one other than the assignor. M., K. & T. Ry. Co. v. Carter, 95 Texas, 461; Land Co. v. Traction Co., 95 Texas, 252; LaRue v. Grozinger, 84 Cal. 281, 18 Am. St. Rep. 179; Mueller v. University, 195 Illinois, 236, 88 Am. St. Rep. 194, and annotations.

*J. M. Wagstaff,* for defendant in error, cited: Friedman v. Peters, 183 Texas Civ. App., 11; National Bank of C. v. Citizens' National Bank, 41 Texas Civ. App., 535; Union Trust Co. v. Wilson, 198 U. S., 530; Bank v. Bates, 1 Fed., 702; Babcock v. Bank, 118 Ind., 212.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

E. S. Keen, W. B. and John Guitar, Jr., compose the partnership, Stamford Compress Company, and being engaged in operating a cotton compress at Stamford, Texas, executed this instrument:

"No. 290. Stamford, Texas, May 13th, 1908. No. Bales 42.

"Stamford Compress Company. Received from West Cotton Yard for account of Will Rives, Mark........ at owner's risk, forty-two bales cotton. Not responsible for water damage or loss or damage by fire. This receipt must be returned on delivery of the cotton and is non-negotiable. (Signed) T. O. Purkett, Supt."

The Court of Civil Appeals overlooked the requirement of the statute that they should find and state conclusions of fact, but there being no dispute about the transaction we will dispose of the case on the record.

Rives, for a valuable consideration, delivered the receipt to the defendant in error, and thereafter Rives received the cotton from the Compress Company, stating that the receipt was among his papers and would be delivered. The Compress Company had no notice of the transfer of the receipt by Rives. The receipt was in writing and not negotiable by the law merchant, therefore, within the terms of Article 308, Revised Statutes, and the assignment must be given the effect prescribed by the statute. We assume without going into detail of the evidence that the bank acquired title to the receipt and to the cotton. The bank sued the Compress Company for the value of the cotton and the latter defended on the ground that it had no notice of the transfer of the certificate when it delivered the cotton to Rives and that Rives had claimed to be the owner thereof.

Article 308, Revised Statutes, reads as follows:

"The obligee, or assignee, of any written instrument not negotiable

by the law merchant, may transfer to another, by assignment, all the interest he may have in the same."

The receipt was not assignable at common law, and the purpose of the Legislature in enacting the article copied was to make such instrument assignable, so that the person to whom such instruments should be payable might assign the contract, thus placing the assignee in the place of the assignor. But the assignee of such contract could not have sued the maker thereof at common law, but must have used the name of the original obligee. To enforce the right acquired under Article 308, the Legislature enacted Article 309, Revised Statutes, which reads:

"The assignee of any instrument mentioned in the preceding article may maintain an action thereon in his own name, but he shall allow every discount and defense against the same which it would have been subject to in the hands of any previous owner before notice of the assignment was given to the defendant; and in order to hold the assignor as surety for the payment of the instrument, the assignee shall use due diligence to collect the same."

By the plain language of the two articles copied the rights of the parties are defined to be that the bank acquired title to the property and by notice to the Compress Company could have compelled delivery to it, the bank, and if the Compress Company had, after such notice, delivered the cotton to Rives, it would be required to pay its value to the bank. The right given by Article 309 to sue on the contract is predicated upon the provision that requires it to allow all defenses which the Compress Company had against Rives which arose in favor of the Compress Company before it had notice of the assignment of the receipt.

Article 309 made it the duty of the bank, when it received the receipt, to give notice to the Compress Company of the transfer in order to hold the obligor responsible to the assignee.

It follows as a necessary conclusion that the Compress Company had the right to deal with Rives as owner of the cotton until notice was given to it of the transfer of the receipt to the bank. Rives gave such reason for not presenting the receipt as under the circumstances was reasonable and the Compress Company had the right to reply upon his statement. Swearingen v. Buckley, 1 Texas Unreported Cases 421; Daniel Neg. Inst., Sec. 742.

In Swearingen v. Buckley it was said: "It was the duty of the assignee of a non-negotiable note to promptly notify the maker of such transfer. It is even held that a transfer, save as between the payee and the indorsee, is not complete until such notice was given." * * * "Buckley called on the payee, who by the terms of the note was the creditor, tendered him checks on the railroad; they were taken and change returned; the payee accounted for the absence of the note by saying it was mislaid, and assured Buckley that it 'would not trouble him any more. He would put a release of it on record.' He gave a receipt for the note indorsed on the back of the deed; and the plaintiff, Buckley, testified that he had no notice of the transfer."

It is true that the decision was by the Commission when the opinions were not approved by the Supreme Court, but the members of that

Commission were able lawyers and their opinions have been frequently cited and approved.

It is the policy of our statute to put upon the assignee of non-negotiable contracts the duty to give notice to the maker of the transfer thereof, and the courts have no authority to change that policy by construction. If we look to the reason of the law, that construction of the statute will be sustained, for the assignee must know the maker, but the maker has no means of knowing who is assignee until notice has been given.

By a strong implication Article 309, supra, authorizes the obligor in a non-negotiable contract to recognize the obligee as the owner of the property until notified of its assignment.

There is no dispute of the proposition that the assignment and delivery of the receipt by Rives vested the title to the cotton in the bank, which could have maintained an action for it. For instance, if Rives, after getting possession of the cotton, subsequently to the assignment of the receipt, had sold the cotton to another party, the bank could have recovered it from such purchaser. So the bank could have recovered the cotton from Rives or from the Compress Company before delivery to the assignee. Although the assignment of the receipt vested title to the cotton in the bank, it did not transfer the contract. (Jones on Pledges, Sec. 281.) The Compress Company could not be made bailee to the bank without notice to it of the assignment of the contract. (Benjamin on Sales, Sec. 814-5-6-7.)

At common law the bank could not recover in this case because it never became bailor to the Compress Company. We find no decision or other authority to the contrary.

To get a clear comprehension of Articles 308 and 309, Revised Statutes, let us ascertain in what respects the statute has changed the common law. Aside from the statute the suit could not have been maintained by the bank in its own name. The statute gives that right. At common law the bailee was entitled to all defenses which accrued against the bailor before notice of assignment. By the statute the right of the assignee to sue upon the instrument in his own name is conditioned that he shall allow to the maker "every discount and defense" which he had before notice of the assignment was given. If he cannot recover except that he allow such defenses, then it follows logically that the bailee had a right to deal with the original bailor as owner of the cotton until notice should be received of the transfer, for no defenses could accrue except by transactions with the original bailor concerning the property, and such transaction must have been after the transfer of the receipt and before notice of such transfer, which notice could not be given before the contract was assigned. We are of opinion that under the articles of the statute quoted the maker of any non-negotiable instrument may deal with the bailor or payee in such contract as the owner of the property bailed or as entitled to claim the performance of the contract until notice of assignment shall have been given by the assignee. It is the duty of the assignee of such contract to at once give notice thereof to the maker. (Daniel Neg. Instr., Sec. 742.) We repeat that we make no contention against the claim that the title to the cotton passed to

the bank. The question is distinctly as to the liability of the Compress Company for cotton it delivered to the bailor before notice of assignment. We assert that the bank must allow all "discounts and defenses" which the Company had against Rives when notice of the transfer was given.

The Honorable Court of Civil Appeals cited these cases: Union Trust Co. v. Wilson, 198 U. S., 530. In that case the court was answering three questions certified to it. The question at issue here was not before the court. The opinion does not bear upon this issue in the remotest degree.

Friedman v. Peters, 18 Texas Civ. App., 11, 44 S. W., 572, and National Bank of Cleburne v. Citizen's Bank, 41 Texas Civ. App., 535, 93 S. W., 209, are cited, but neither have any bearing upon our question. In neither case was the liability of the maker of the contract involved. In Friedman v. Peters, the contest was between two claimants of five barrels of whiskey under different assignments of the warehouse receipt; the liability of the bailee was not involved. In National Bank of Cleburne v. Citizen's Bank, the contest was between two claimants of the cotton to which the bailee's liability was not involved.

The following cases and text books have been cited as supporting the claim of the bank. Jones on Pledges, sec. 280-330. Section 280 simply states the undisputed proposition that the delivery of the warehouseman's receipt passes to the assignee the title to the property. Section 281 specifically says: "The receipt merely stands in place of the property it represents, and the delivery of it has the same effect in transferring the title to the property as the delivery of the property itself. The delivery of the receipt does not transfer the contract so as to enable the assignee or indorsee to maintain an action upon it in his own name. There is no privity of contract between the warehouseman and the assignee. The assignee occupies no better position, as regards the warehouseman, than the assignor had." That section states the law plainly against the contention of the bank.

Gibson v. Stevens, 8 How. (U. S.) 384, was tersely stated to present this question: "This case is one of much interest, and has been very fully argued. There is, however, but a single question in it, and that is, whether the property in dispute was transferred to the plaintiff in error, and vested in him, by the indorsement and delivery of the warehouse documents, in the manner stated in the record." The case in no sense involved the question here presented, but it does affirm that the assignments of warehouse receipts pass the title to the property as against the claims of creditors.

In Babcock v. People's Savings Bank, 118 Ind., 212, a warehouseman gave a receipt in which it was stated that the property received would be delivered only upon return of the receipt and the court correctly held that the words, only upon return, etc., had the effect to make the warehouseman bailee of the assignee and that it authorized the assignee to rely upon the implied promise to hold the property for any assignee of that receipt. The court said: "Those instruments represent as true two very essential things: that they, the warehousemen, received the property mentioned in the receipts as

warehousemen, and that it will be delivered only on the return of the certificates, properly endorsed.    The plainest principles of justice require that the appellants should not be permitted to deny what they represented, and thus cause loss to one who, in good faith, acted upon their statements, and loaned money upon the faith of their representations.    By issuing these receipts, the warehousemen represented that they had the flour in their warehouse, and would there keep it until the certificates were returned, and they, and not an innocent third person, who has relied on their representations, must bear the loss.''    The receipt in question in that case reads as follows: ''Received from Elles & Knauss, in our William Street Warehouse, on storage from L. & N., 140 barrels of flour, to be delivered only on return of this certificate, properly endorsed, and payment of charges and insurance.''    No such recital occurs in the receipt in this case.

The Planters Rice Mill v. Bank, 78 Ga., 574, was a suit against the rice mill upon receipts for rice which it claimed never to have received; the receipts having been issued to enable a party to obtain loans, which he did, upon the faith of the wheat being in store.    The case simply decides that the mill was liable because it had issued a false receipt by which the lender was deceived.    It did not matter that the receipts were false.

Saurez v. Steamship Co., 1 Wood, Circuit Court Reports, 96, involved the liability of the ship for a package delivered to a member of the crew who undertook personally to deliver it.    The court held the ship not liable.    Comment is unnecessary.

In Stewart, Gwynne & Co. v. Insurance Co., 9 Lea (Tenn.) 104, the warehousemen issued a receipt for forty bales of cotton for the purpose of its being used as security for a loan from the Insurance Company.    It contained this stipulation: ''The stipulation upon the face of the receipt that the articles mentioned will be delivered only upon the return of the receipt, is a *contract* upon which the assignee has a right to rely, upon the faith of which he has acted and for the breach of which he has his action against the warehouseman.''    The quotation is my comment.

Quick v. Milligan, 108 Ind., 419, 58 Am. R., 49, is wholly irrelevant.

Preston v. Witherspoon, 109 Ind., 457, 58 Am. R., 417, involved the authority of a warehouseman to sell wheat deposited with him.

Bank v. Bates, 1 Fed., 702, decides only that the assignment of a warehouse receipt vests the title to the property in the assignee who may sue for and recover it.

Cowdrey v. Vandenburgh, 101 U. S., 572, did not adjudicate the liability of the maker of the contract.    The question was, did an assignee get the right of the payee.

The earnestness with which the claim of the bank has been urged, based upon such elaborate citation of cases, has rendered it proper, if not necessary, for me to review the authorities relied upon.    I have read many other cases bearing upon this question and have not found one which, in my opinion, supports the interpretation sought to be placed upon our statute.

It is said to be important to the banks and those who advance money

on such receipts. It is likewise important to the Compress Companies. Some Compress Company handled each bale of cotton that is represented by such receipts, and each bank or person who may come into possession knows exactly to whom to give notice, while the Compress Company probably does not know who holds the obligation.

Paramount to all considerations of policy is the undeniable fact that the plain language of the law places the duty on the assignee to give notice of his acquisition of the receipt. This court cannot by construction shift the duty to the maker. This rule applies to all non-negotiable paper and its real importance applies more to such other classes of contracts.

There is no conflict in the evidence in this case; it is purely a question of law, and, holding as we do, that the bank showed no cause of action, the judgments of the District Court and Court of Civil Appeals are reversed and judgment will be rendered that the Farmers & Merchants National Bank take nothing by this suit and that the Stamford Compress Company recover all costs of all of the courts.

MR. JUSTICE RAMSEY delivered the following dissenting opinion.

Before the original opinion in this case was handed down I had prepared a dissenting opinion. On account of my absence when the case was decided this dissenting opinion was not at the time carried into court, but, by the courtesy of my associates, was withheld in order that we all might have the benefit of any discussion and authority which might be included in the motion for a rehearing which it was assumed would be filed. This motion I have carefully examined and have again gone over the opinion of the Chief Justice, speaking for the majority of the court. That opinion contains intrinsic evidence of thorough care and preparation bestowed in its composition and, it must be confessed, is as strong a presentation of the view of the majority as could be made.

I regret exceedingly that I am yet unable to agree with my brethren and more regret that the last word of my judicial career shall be a word in dissent from the conclusion of the majority of the court; but, if I am true to my own convictions and the high ideals which have a part of the teaching of my life, I must follow my own judgment under all circumstances and not that of another. It will be understood, of course, that I write with becoming deference and am impelled so to do by such compulsion of logic as leaves no other course open to me.

Long before I came upon the bench I had the most profound respect for Chief Justice Brown, and an intimate association for many months has ripened this confidence into a deep affection. I feel that he deserves as much as any man who ever lived the praise which the "Tattler" ascribes to Chief Justice Holt of England: "He was a man of profound knowledge of the laws of his country and as just an observer of them in his own person. He considered justice as a cardinal virtue and not as a trade for maintenance." But if I am to follow my own convictions and not those of another I must and should, on a matter of so great importance, write in some detail the

grounds and reasons on which such convictions rest, to the end that if my views are correct and represent the law as I now see it, that they will furnish in the future a reason for their just recognition, or, if I am in error, that there will be opportunity for such legislation as the demands of trade and commerce require.

On May 13th, 1908, the plaintiff in error, Stamford Compress Company, executed to Will Rives an instrument in words and figures as follows:

"No. 290. Stamford, Texas, May 13th, 1908. No. Bales, 42.

"Stamford Compress Company. Received from West Cotton Yard for account of Will Rives, Mark————at owner's risk forty-two bales cotton. Not responsible for water damage or loss or damage by fire. This receipt must be returned on delivery of the cotton and is non-negotiable. (Signed) T. O. Purkett, Supt."

It is undenied that the Compress Company received the cotton therein referred to and that it was engaged in receiving and compressing cotton, so that, for all the purposes of this case, it is and must be treated as a warehouseman.

Soon after this receipt was issued Rives sold the cotton to one Zethraeus and drew on him for the agreed value of same by draft to which was attached his receipt. Under an arrangement with the Farmers & Merchants National Bank this draft was, by Zethraeus, accepted, and with the receipt attached taken by the bank and the sum drawn for advanced to Zethraeus and paid to Rives. Sometime thereafter the plaintiff in error delivered this cotton without the production of the receipt theretofore issued by it and without actual knowledge that the same had been transferred by Rives, and, upon the latter's assurance that such receipt was in the bank at Stamford and would be by him later obtained and delivered. The court of Civil Appeals held, in substance, that on this state of case the Compress Company was liable for the value of the cotton, which value was not a matter of dispute, and I think this conclusion is correct.

It may be conceded that none of the cases which I shall hereafter discuss in terms decide the very question here involved, but, as it seems to me, by analogy and necessary implication, they are of controlling weight.

In the case of Friedman v. Peters, 18 Texas Civ. App., 11, 44 S. W., 572, Chief Justice Garrett, of the Galveston Court of Civil Appeals, uses this language: "The transfer of the receipts or certificate by Shook to the appellants with the understanding that they should hold the whiskey for which it was given for security for his indebtedness to them, operated as a delivery to them of the whiskey in the bonded warehouse for that purpose, and placed the same beyond the control of Shook as between appellants and the warehousemen, without the necessity of notice by the warehousemen of the transfer. Jones on Pledges, secs. 280-330; Gibson v. Stevens, 8 How., 384."

Now the effect of this holding—and this, as I understand, is the universal rule—is that the receipt stands for and is a symbol of the property therein described, and that a delivery of the receipt in law constitutes a delivery of the cotton. Undoubtedly, in this case, if

the transaction had been a sale and Rives had been paid on the spot in money for his cotton, this would, in law, have passed the undoubted title to the cotton and this, as I believe, without the necessity of any or further notice. We have in this State no law requiring notice of sales of personal property, even the old common law of *market overt* does not obtain in this State.

In the case last cited the Supreme Court of the United States, speaking through Chief Justice Taney, uses this language: "It is true there is no formal assignment indorsed on the warehouse document. But the technical rules of common law conveyances and transfers of property have never been applied to mercantile contracts made in the usual course and forms of business. The indorsement of the delivery order upon these evidences of his title, like the indorsement upon a bill of lading, sufficiently manifests the intention of the parties that the title and possession should pass to Gibson. And when that intention is evident from the language of the written instruments and the nature and character of the contract, it is the duty of the court to carry it into execution, without embarrassing it with needless formalities. A contrary rule would most commonly defeat the object which both parties designed to accomplish, and believed they had accomplished, by the instruments they executed."

Another case in point is that of Babcock v. The People's Savings Bank, 118 Ind., 212. In that case the receipt in question is as follows: "Received from Elles & Knauss, in our William Street Warehouse, on storage from L. & N., 140 barrels of flour, to be delivered only on return of this certificate, properly endorsed, and payment of charges and insurance." It seems in that case that the Savings Bank, in good faith, lent Elles & Knauss $4,000.00 and they delivered to it warehouse receipts. After this had been done the appellants, the warehousemen, delivered the flour to the depositors, Elles & Knauss, or some other persons, without the return of the warehouse receipts. In discussing this state of case the court uses this language: "Our judgment is, that the endorsee of the warehouse receipts issued by the appellants having, in good faith, loaned money upon them, is entitled to the possession of the flour, or to its value, and that the appellants cannot be heard to dispute the endorsee's title, nor to aver that they did not receive the property on the terms specified in the receipts. Those instruments represent as true two very essential things: that they, the warehousemen, received the property mentioned in the receipts as warehousemen, and that it will be delivered only on the return of the certificates, properly endorsed."

"The plainest principles of justice require that the appellants should not be permitted to deny what they represented, and thus cause loss to one who, in good faith, acted upon their statements, and loaned money upon the faith of their representations. Our conclusion is right, as we believe, in principle, and is, we know, well sustained by the authorities. Planters, etc., Co. v. Merchants Nat'l Bank, 78 Ga., 574; McNeil v. Hill, 1 Woolw. (C. C.), 96; First National Bank v. Bates, 1 Fed., 702; Whitlock v. Hay, 58 N. Y., 484; Stewart v. Phœnix Ins. Co., 9 Lea, 104; Coolebrooke Coll. Secur., p. 506. By issuing these receipts, the warehousemen represented that

they had the flour in their warehouse, and would there keep it until the certificates were returned, and they, and not an innocent third person, who has relied on their representations, must bear the loss. Quick v. Milligan, 108 Ind., 419; Preston v. Witherspoon, 109 Ind., 457; Cowdrey v. Vanderburgh, 101 U. S., 572.''

It seems very generally to have been held that the transfer of a warehouse receipt operates as a transfer of the title. Davis v. Russell, 52 Cal., 611; Horr v. Barker, 8 Cal., 613; Merchants' Bank v. Hibbard, 48 Mich., 118, 42 Am. R., 465; Mass. Pub. Sts., c. 72, para. 6; Burton v. Curyea, 40 Ill., 320, 89 Am. Dec., 350; Second Natl. Bk. v. Walbridge, 19 Ohio St., 424, 2 Am. R., 408; Shepard v. King, 96 Geo., 81; Farmers' Packing Co. v. Brown, 87 Md. 1 (1898); Tiedman v. Knox, 53 Md., 618; Ruhl v. Corner, 63 Md., 182; Seal v. Zell, 63 Md., 356; Hill v. Colorado Bank, 2 Colo. App., 324; Bank of Newport v. Hirsch, 59 Ark., 225; Garoutte v. Williamson, 108 Cal., 135; Cavallaro v. Texas, &c., R. R., 110 Cal., 348, 52 Am. St., 94.

Without undertaking to discuss or analyze the cases, the conclusion to which I have arrived seems to me to be harmony with the rule obtaining in most jurisdictions in the American Union, and, indeed, all of them, unless it be in Massachusetts and Oregon. Hallgarten v. Oldham, 135 Mass., 1, 46 Am. Rep., 433; Gill v. Frank, 12 Ore., 507, 53 Am. Rep., 378.

The following authorities, not all of which are directly in point, may be, I think, profitably read, and with more or less directness seem to me to sustain my view: Adoue v. Seeligson & Co., 54 Texas, 593-609; Whitney v. Tibbitts, 17 Wis., 360-2; Elliott on Ev., vol. 1, sec. 64, pp. 71-4; Gregory v. Wendell, 39 Mich., 337, 33 Am. R., 390; Sacalaris v. Railway Co., 18 Nev., 155, 51 Am. Rep., 737; Merchants Bank v. Hibbard, 48 Mich., 123, 42 Am. St., 465; Osborn v. Koenigheim, 57 Texas, 92-5; Campbell & Clough v. Alford, 57 Texas, 159; Missouri P. Ry. Co. v. Heidenheimer, 82 Texas, 195, 27 Am. St., 861; Durr v. Hervey, 44 Ark., 301, 51 Am. Rep., 594-7; Weil v. Ponder, 127 Ala., 296, 28 So., 655; Sloan v. Johnson, 20 Pa. Super. Crt., 643; Banking Co. v. Peacock, 103 Ga., 171, 29 S. E., 752; Marks v. New Orleans C. S. Co., 107 La., 171, 57 L. R. A., 271; Shingleur-Johnson Co. v. Canton, &c., Co., 78 Miss., 875, 84 Am. St., 656, 57 L. R. A., 800; Milhiser Mfg. Co. v. Gallego Mills Co., 101 Va., 579, 44 S. E., 760; Bush v. Export Storage Co., 136 Fed., 918-33; St. Louis Natl. Bank v. Ross, 9 Mo. App., 399; Conrad v. Fisher, 37 Mo. App., 352, 8 L. R. A., 147; Hale v. Milwaukee Dock Co., 29 Wis., 482, 9 Am. R., 603; Boynton v. Payrow, 67 Me., 587.

It seems almost everywhere to have generally been held that instruments, such as this, while not negotiable in a strict legal sense, are treated and regarded as symbols of the property thereby represented and are sometimes spoken of as the key in the same sense that the delivery of the key of the warehouse is a symbol of the property therein stored. Regarding them, therefore, as the key, they are non-negotiable according to the test both of our statutes and of the law merchant; but they do operate to pass possession and title of the property as effectively as if it were manually delivered; and where, as in this case, on account of the bulk of the property, there can con-

veniently be no such thing as a manual delivery without great inconvenience, the necessities and convenience of trade and commerce make the delivery of the symbol a good delivery of the property thereby represented.

We have been cited to and reliance seems to be placed on Articles 308 and 309 of our Revised Statutes as throwing light upon, and, indeed, controlling the rights of the parties in this case. These articles are as follows:

"Art. 308. The obligee, or assignee, of any written instrument not negotiable by the law merchant, may transfer to another, by assignment, all the interest he may have in the same."

"Art. 309. The assignee of any instrument mentioned in the preceding article may maintain an action thereon in his own name, but he shall allow every discount and defense against the same which it would have been subject to in the hands of any previous owner before notice of the assignment was given to the defendant; and, in order to hold the assignor as surety for the payment of the instrument, the assignee shall use due diligence to collect the same."

A careful reading of these articles of our Revised Statutes has led me to believe that they have, and can have, no controlling effect upon the question here. The intent and purpose of these articles of the Revised Statutes was and is, it seems to me, to lessen, and, indeed, to abrogate the rigor of the common law rule which denied an assignee the right and privilege of suing upon a non-negotiable instrument in his own name, and to have the effect to permit the maintenance of such a suit by the owner of the instrument, subject, of course, to such defenses as the maker thereof could present and maintain against the original holder. So that, in this case, if the warehouse company had had a defense as to Rives, either that it, without fraud, had executed a duplicate receipt or had made a mistake in respect to the amount of the goods received into its possession, it could protect itself against any one to whom Rives might thereafter transfer the receipt, and I believe it was not the intention that it should have, and I think the law should have, none other or further effect than this.

Briefly summarizing my views, as to the legal effect of the whole transaction, these statements of fact, which are not a matter of dispute, and the propositions of law stated above which, as I believe, are sustained by authority and which seems to me to rest upon sound legal reason and to be necessary and essential to the conduct of the business in which the parties were engaged, and to have been within their contemplation, should be given effect and the Compress Company should have been held liable for the value of the cotton covered by such receipt. Unless we close our eyes to, and consent to be unmindful as judges of, what we must know as men, we know, realize, and should recognize that, when cotton is received by a Compress Company for storage and compression, it is known both to the storer and the compress company, and the receipt in question both recognizes and evidences the fact, that it has but taken its initial step in the carrying trade of the country which will send it on its long journey beyond the limits of the State and frequently on the high seas to the farthest islands of the earth, and that it will be necessary, in

accordance with the ordinary processes by which such merchandise is held and disposed of, that it shall be handled and dealt with by the banks of the country who furnish and advance the funds by which this immense and valuable crop is financed in this and other States, and that the compress companies know as well as the person delivering the cotton to them that they must and will be so treated and dealt with. Therefore, as it seems to me, when, as in this case, the compress company issues its receipts in which it assumes and states that the property evidenced thereby is deliverable on return of the receipt, it, for itself, names the conditions on which it will be delivered and by necessary implication assures that it will not be otherwise delivered, and that such is not only the evidence of its consent, but practically an invitation to all others to believe and understand that it holds and will hold as bailee of whomsoever shall come into the lawful possession of the receipt it issues, and will continue to hold such property until its receipt is returned to it. There is nothing personal or confidential in its relation to the initial depositor, which would limit its obligation to hold for him and him only. Whether it held the cotton for Rives, for the Farmers & Merchants National Bank or any other person, stranger or friend, such holder could not add to its liability or impose upon it additional burdens. Therefore, as it seems to me, the effect of the receipt is to give notice of and evidence its consent to a holding by it for the benefit of whoever obtains its obligation, and to evidence not alone its possession of the property, but that such possession of same will continue until the evidence of same, in the way of its receipt, is returned to it. I concede, as the majority opinion holds, that this receipt is non-negotiable in its strict legal sense; but, as I have said, this, under my view, is not only not a controlling feature, but is a matter of no importance at all in the case. It may be said that the persons who desire to make advances upon or purchase the property evidenced by the receipt would protect themselves by giving notice of their acquisition of the title to the property evidenced thereby, but it can as well be said, and such, under my interpretation and study of them, seems to have been the construction of our courts, that the person who issues the receipt and undertakes by its very terms to protect himself against imposition or losses by requiring its production and surrender before the delivery of the property, has, by the very nature of his act and by the very nature of his receipt, named the condition on which he would surrender the property so held. Besides, as a matter of fact, to require such notice would, in the nature of things, beget confusion, invite litigation and so disarrange and interfere with the orderly conduct of business as to be substantially impracticable. Besides, if this doctrine of giving notice is to be applied in this case, it must equally be applied to a shipment where the cotton or other product might go over a dozen different lines of railroad in and out of the State and where, unless the rights of the holder of the receipt are to be protected, the company having the cotton in possession at any particular time might deliver possession thereof without surrendering the bill of lading, or other receipt, and thus defeat the rights of the holder of such bill. This, as I conceive, cannot be the law. The whole

matter is rendered clear and the rights of the parties definitely fixed if we proceed on the principle and accept as true the legal rule that the person issuing a receipt such as this, by so doing consents to and invites others to treat same as its obligation to hold the property therein described for whomsoever may thereafter lawfully obtain it from the person to whom it was issued, and that such warehouseman undertakes to protect itself by requiring the production and surrender of its receipt before parting with the possession of the property.

Of course, if these are correct, it would lead to an affirmance of the judgment of the Court of Civil Appeals, but if they are unsound, as the majority holds, it logically follows, there being no dispute about the facts, that their judgment is correct and should be allowed to stand.

I regret that I have not the time to elaborate the views herein expressed and to discuss at length and undertake to apply the authorities above referred to, as well as those treated and discussed in the opinion of the Chief Justice; but I have rather sought to state the general principles and rules of law which, as it seems to me, should and do control.

*Reversed and rendered.*