## CARTER et al. v. FARMERS' NAT. BANK OF SEYMOUR. (No. 9245.)

(Court of Civil Appeals of Texas. Ft. Worth. March 6, 1920. Rehearing Denied April 3, 1920.)

1. **Warehousemen ⬦⟾15(1) — Cotton tickets not negotiable at common law.**

Cotton tickets, issued for cotton stored in warehouse, were not negotiable at common law.

2. **Warehousemen ⬦⟾15(2) — Cotton tickets negotiable instruments in hands of indorsee.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 7830, providing that cotton tickets issued by public weigher "shall be negotiable by delivery and indorsement of the owner,". held to make cotton tickets negotiable instruments only in hands of holder to whom it has been negotiated by delivery and indorsement.

3. **Warehousemen ⬦⟾15(1)—Statutes in derogation of common law must be strictly followed.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 7830, making cotton tickets issued by public weigher negotiable by delivery and indorsement, must be strictly followed by one relying on its benefit and protection, since it gives to such tickets a character other than that which they would have had under the common law.

4. **Warehousemen ⬦⟾15(3) — Public weigher failing to take up cotton tickets not liable to pledgee.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 7828, as amended by Acts,35th Leg. (1918) 4th Called Sess. c. 95, and article 7829, public weigher, who delivered cotton to owner without taking up cotton tickets, was not liable to bank to which former owner had transferred tickets as collateral without indorsements subsequent to the sale of the cotton, since the tickets, not having been indorsed, were not negotiable instruments in hands of bank under article 7830, and since the bank as a mere assignee, under articles 583 and 584, acquired no rights not held by assignor at time of assignment.

Appeal from District Court, Young County; Wm. N. Bonner, Judge.

Suit by the Farmers' National Bank of Seymour against J. T. Carter and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Kay, Akin & Weldon, of Wichita Falls, for appellants.

J. A. Wheat, of Seymour, and P. A. Martin, of Wichita Falls, for appellee.

CONNER, C. J. The appellee filed this suit in the district court of Young county on September 3, 1918, against J. T. Carter, as principal, and J. H. Carter, J. E. Parsons, and D. D. Cusenbury, as sureties, all of Young county, to recover the sum of $4,000, with interest, upon the official bond given by J. T. Carter as the public weigher at Graham, Tex.

---

⬦⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The plaintiff alleged the official status of Carter, and pleaded that it had advanced $4,000 in money to one E. H. Pistole, of Seymour, and that Pistole, as collateral security for said loan, had assigned to and deposited with plaintiff 35 cotton tickets, issued by J. T. Carter, weigher. . Each of said tickets recited that the cotton for which they were issued "was deliverable to order on return of this certificate and payment of charges." The pleading set forth the date of each ticket and the names of the various farmers of Young county to whom the tickets had been delivered by the weigher. The plaintiff further alleged that Carter had delivered the cotton to one Albert Kay without demanding or receiving the cotton tickets mentioned, whereupon it was charged that Carter had converted the cotton to the plaintiff's damage in the amount for which it sought recovery.

The defendants answered by general demurrer, general denial, and specially answered to the effect that at the time of the delivery of the cotton tickets by Pistole no one of them had been indorsed by either Pistole or by the person to whom the several tickets had been issued, as required by law, and that Pistole, long prior thereto, had sold the cotton, which in due course of trade had been acquired by Albert Kay, to whom, on demand therefor, the weigher had delivered the same, and that hence, at the time of the bank's acquisition of the tickets, if it did acquire the same, Pistole was without any beneficial interest in the cotton, and that the bank accepted the tickets, charged by law with full notice of Pistole's want of title.

Upon the conclusion of the evidence, the court rendered judgment for the bank, and Carter and his sureties have appealed.

The court filed the following conclusions of fact and law:

"Finding of Fact.

"(1) I find from the testimony that the defendant J. T. Carter is the duly elected public weigher of precinct No. 1, Young county, Tex., and was such weigher during the years 1916, 1917, 1918, and up to the time of trial, and that the other defendants, J. H. Carter, J. E. Parsons, and D. D. Cusenbury are his official bondsmen, as such public weigher, having executed a statutory bond with him conditioned for the faithful performance of his duties as public weigher, in the sum of $5,000.

"(2) I find that the cotton receipts sued upon, 35 in number, calling for 35 bales of cotton, were issued by the defendant J. T. Carter in the autumn of 1917, and that each receipt or ticket represented a bale of cotton left on storage by the owner in the Graham cotton yard, and that about the 20th of November, 1917, the defendant Carter, as public weigher, delivered said 35 bales of cotton to A. W. Kay, without requiring the presentation and cancellation of said receipts, upon the representation that the receipts would be sent him later."

"(4) I find that these 35 receipts were sold by the various owners to one E. H. Pistole, who resided and conducted a business in Seymour, Tex., some time in the fall of 1917 and remained in his hands until April 16, 1918, when Pistole delivered said receipts to the plaintiff, Farmers' National Bank, as collateral security for a loan of $4,000, the bank taking what is known to the cotton trade as a "cotton acceptance" as described in plaintiff's petition, and that said acceptance is unpaid except for a credit of $41.11 interest and $94 on the principal; that Pistole died on or about the 5th day of May, 1918, and that his estate was hopelessly insolvent; that the bank demanded the cotton from the defendant Carter upon the receipts, and was informed that the cotton had long since been delivered and shipped away from Graham.

"(5) I find that at the time Kay bought the cotton he was informed by Pistole that he had sold it to Roy McDavid, and that Kay bought it from McDavid, believing him to be the owner of the cotton; that neither McDavid nor Kay ever received the tickets or receipts from Pistole, and that they were retained by him until he placed them in the bank as above stated. I further find that the receipts were not indorsed when he placed them in the bank.

"(6) I find that the value of the 35 bales of cotton was more than the amount of the plaintiff's demand in this suit.

"Conclusions of Law.

"Under the above facts, I conclude as a matter of law that the plaintiff became the owner of the cotton represented by the receipts or tickets to the extent of the claim for the payment of which they were deposited as collateral security, and that, defendant having by his delivery of said cotton without taking up and canceling the receipts as directed by the statute made the delivery of the cotton impossible, the bank is entitled to recover from the defendant J. T. Carter the amount of its claim, with 6 per cent interest from April 16, 1918. I also conclude that the delivery of the cotton without taking up the receipts was a violation of the official bond of defendant J. T. Carter, rendering his sureties liable for the amount of the plaintiff's debt, without interest, and that judgment should be rendered against them jointly and severally for the same."

. We are of the opinion that the court erred in his conclusions of law, and that upon the facts found, which we adopt, the judgment should have been for the defendants.

A list of the 35 tickets was attached as an exhibit to the plaintiff bank's petition. The following is one of them:

"Graham Cotton Yard,

"No. 1328.　　Graham, Texas, 10/11, 1917.

"Received of J. T. Thigpen one bale of cotton for account of stored.

"Deliverable to order on return of this certificate and payment of charges. Owner's risk of fire unless insured.

"Storage charges after ten days, fifteen cents.

"Weight, ——— lbs.

"Tare, ——— lbs.

"Net, ——— lbs.

"J. T. Carter, Weigher."

All other tickets were the same except as to date, weight of cotton, and the name of the party to whom it had been delivered.

The General Laws provide for the appointment or election of public weighers, who are required to take the oath of office prescribed by the Constitution and to execute a bond with good and sufficient securities in the sum of $5,000, conditioned upon "the faithful and impartial performance of the duties of the office." See, article 7828, as amended by Acts 35th Leg. (Fourth Called Session, p. 198), and article 7829, V. S. Tex. Civ. Stats. The next article (7830) prescribes the duties of such weigher and reads as follows:

"When a person is appointed or elected public weigher, and shall have qualified as provided in article 7829, he shall enter upon the duties of his office and weigh, without unnecessary delay, all cotton, wool, sugar, hay, pecans, or grain, required to be weighed by him. He shall prepare a convenient place or places of easy access to the public in which to perform his duties. He shall mark upon the bales of cotton, hogshead or barrels of sugar, and bales of wool, or on tags attached thereto, the weights thereof in figures, and shall deliver to the owner, or his agent, of all cotton, wool, hay, sugar. pecans, or grain a certificate or a statement at the option of the owner in writing with ink or an indelible pencil, setting forth the weights of such cotton, wool, sugar, hay, pecans, or grain weighed by him, over his official signature. And where a certificate is issued it shall be negotiable by delivery and indorsement of the owner; and it shall be the duty of the public weigher issuing such certificate, if the produce for which the same was given is left with him on storage, to keep the produce for which the same was issued in his possession, and not remove or permit to be removed such produce until such certificate is returned and delivered to him; and he shall immediately stamp or mark in writing with ink such certificate, 'canceled,' and shall make a corresponding memorandum upon his book: Provided, that, where the holder of such certificate desires to ship or receive from the possession of the public weigher a portion of the produce for which such certificate was given, he may deliver to the public weigher the certificate; whereupon it shall be the duty of the public weigher to deliver such portion of the produce, and, in lieu of the original certificate, he shall give the holder a new certificate for the balance remaining in his possession, and shall cause the original certificate to be canceled, and make the memorandum above provided for. He shall keep in a well-bound book a record of each bale of cotton, sack of wool, or barrel or hogshead of sugar, hay, grain, or pecans weighed by him, numbering the same, giving the gin's marks of cotton bales and number, with the name of the seller and purchaser thereof; which book shall be open at all reasonable hours for the inspection of the public; and he shall, upon application therefor by any one, issue certified copies of such certificate, for which he may charge the sum of ten cents, including certificate thereto. The provisions of this article shall also apply to private weighers who are engaged in weighing for the public, as well as to public weighers."

[1] It is undisputed that the cotton had theretofore been sold, and the question for solution is whether the appellee bank became, under the circumstances, a bona fide purchaser and owner of the cotton represented by the cotton tickets, and this, in turn, depends upon whether the cotton tickets as acquired by the bank were negotiable. It seems clear that they were not negotiable by the common law. In 8 Corpus Juris, p. 130, § 225, it is said:

"The law merchant gave negotiable character to instruments for the payment of money only and to no others, and by the rules of the law merchant a negotiable bill or note cannot be made payable in goods, wares, or merchandise, or in labor. So an instrument. is not negotiable where payable in bonds, scrip, state paper, checks, foreign bills, good solvent cash notes, or the like."

[2, 3] It is insisted, however, in behalf of appellee, in effect, that article 7830, above quoted, constitutes cotton tickets of the kind under consideration negotiable instruments, and a reading of the article indicates that it was the legislative purpose, under the restrictions given, to make such tickets negotiable, and evidence of the ownership of the article to which the certificate relates. The language of the statute, however, is that where a certificate of the kind is issued, it "shall be negotiable by delivery and indorsement of the owner." The statute, undertaking to give a character to the tickets other than that it would have under the common law, must be strictly followed by one relying upon its benefit and protection. In the case before us, it is undisputed that the cotton tickets as delivered by Pistole to the bank were not indorsed either by him or by any one else. It is true such instruments under our statutes may be assigned, for article 583, V. S. Tex. Civ. Stats., provides that—

"The obligee, or assignee, of any written instrument not negotiable by the law merchant may transfer to another, by assignment, all the interest he may have in the same."

It is to be noted that this article limits the assignment to the actual interest of the assignor. And this limitation is further emphasized by the next article (584), which declares that—

"The assignee of any instrument mentioned in the preceding article may maintain an action thereon in his own name, but he shall allow every discount and defense against the same which it would have been subject to in the hands of any previous owner before notice of the assignment was given to the defendant; and in order to hold the assignor as surety for the payment of the instrument, the assignee shall use due diligence to collect the same."

[4] Under the facts found, Pistole, at the time of his assignment and delivery of the cotton tickets under consideration to the appellee bank, had no real interest in either the tickets or in the cotton which they represent-

ed. It is conceded that he long theretofore had sold the cotton to another, and such other person, as between him and Pistole, and in equity, became not only the owner of the cotton, but of the tickets, with the right to their possession. The bank therefore under the statutes acquired no greater right than Pistole had. Let us suppose that Thigpen, or any other farmer to whom Carter issued a certificate, had gone to Carter and demanded his bale of cotton before he had sold the bale or assigned the certificate, stating that he had lost the certificate, and Carter upon such statement had delivered the cotton to Thigpen, can it be said that any person, who may thereafter have found the certificate or even had the certificate delivered to him unindorsed by one claiming to be the owner, could have recovered from Carter as for a conversion, because of its delivery to Thigpen without a return of the certificate? Or even if it be supposed that during the time Pistole possessed the cotton tickets and after he had in fact sold the cotton which they represented to Albert Kay, he had gone to the appellant weigher and demanded the cotton, can it be supposed, notwithstanding Carter's delivery of the cotton to Pistole's vendee (Kay) without a delivery of the cotton tickets, that Pistole would have any right in law or equity to recover of Carter and his sureties the value of the cotton so delivered to Kay? We think not.

In the case of Stamford Compress Co. v. Fort Worth National Bank, 105 Tex. 44, 143 S. W. 1142, 144 S. W. 1130, Ann. Cas. 1914D, 1298, it appears that the compress company issued the following warehouse receipts:

"No. 290. Stamford, Texas, May 13, 1908. No. bales, 42. Stamford Compress Company. Received from West cotton yard for account of Will Rives, Mark * * * at owner's risk, forty-two bales cotton. Not responsible for water damage or loss or damage by fire. This receipt must be returned on delivery of the cotton and is nonnegotiable. [Signed] T. O. Purkett, Supt."

Thereafter Rives for a valuable consideration delivered the receipt to the Ft. Worth National Bank, but later demanded and received the cotton from the compress company, stating that the receipt was among his papers and would be delivered. The compress company had no notice of the transfer of the receipt by Rives. It is to be noted that the receipt there considered provided that it must be returned on delivery of the cotton, and we cannot say that the language of article 7830, requiring the weigher to keep the cotton left with him on storage to demand the cotton certificate issued by him before delivery of the cotton, is to be given greater effect than the effect to be implied from the warehouse receipt considered by the court in the case mentioned. Nevertheless, in that case, it was held that, because of the effect of

article 583 and article 584, hereinbefore quoted, the Ft. Worth bank had no right of recovery against the compress company. This decision was followed in a similar case by this court. See Stephenville Compress Co. v. First National Bank, 148 S. W. 335.

We conclude that under the facts found the appellee bank did not acquire title to the cotton represented by the tickets delivered by Pistole, and is not entitled to recover of appellant and his sureties on the ground that it was a bona fide purchaser of the certificates for value and without notice of the existing defense.

It is accordingly ordered that the judgment below be reversed and here rendered for appellants.