40b 501
s46  862

JOSEPH THOMAS, TRUSTEE, V. CITY NATIONAL BANK OF HASTINGS.

FILED MAY 2, 1894.   No. 5542.

1. **National Banks:** GUARANTY. While a national bank may not lend its credit for the accommodation of others, still it may guaranty the payment of commercial paper as incidental to the exercise of its power to buy and sell the same.

2. ———: ———: POWERS OF PRESIDENT: RATIFICATION. A, being indebted to a national bank and being the holder of certain negotiable notes, indorsed them generally and delivered them to the president of the bank, who negotiated them for value to C, at the same time executing in the name of the bank a written guaranty of payment. From the proceeds of the sale A's debt to the bank was canceled. *Held* (following *People's Bank*

*v. National Bank*, 101 U. S., 181), (1) That the guarantying of the notes under such circumstances was within the powers of the bank; (2) that the authority of the president to execute the guaranty would be conclusively presumed in favor of the purchaser acting without notice to the contrary; (3) that the retention and enjoyment by the bank of the proceeds of such transaction constituted a ratification of the president's act.

3. ——: ——: EVIDENCE: INSTRUCTIONS. Where the evidence on behalf of the plaintiff suing upon such a guaranty tended to establish the state of facts set forth in the foregoing paragraph, it was error for the trial court, in the giving and refusal of instructions, to withhold from the jury the law as above stated.

ERROR from the district court of Adams county. Tried below before GASLIN, J.

*Capps & Stevens* and *O. H. Dean*, for plaintiff in error.

*M. A. Hartigan* and *W. W. Morsman*, contra.

IRVINE, C.

The plaintiff in error sued the defendant in error, a national bank, alleging that on January 21, 1889, one Elsmore and one Knowlton made and delivered to Charles H. Paul certain promissory notes secured by real estate mortgage of the same date; that Paul in the ordinary course of business indorsed and delivered the notes to the bank; that the bank executed and delivered to plaintiff a guaranty as follows:

"For value received, we hereby assign and transfer the within note to Joseph Thomas, trustee, and guaranty payment of the principal and interest on the same on the terms and conditions stipulated in the mortgage of even date securing the same.

"[SEAL.]          CITY NATIONAL BANK,
                              HASTINGS, NEBR.;
                    "By H. BOSTWICK, *Pt.*"

That the foregoing contract was written upon each of said notes, and that plaintiff relying thereon and on the

delivery of·said notes and mortgage to him, he paid over
to the bank $10,500 as consideration therefor, which money
was transmitted · by certain bills of exchange, which ·were
duly indorsed, received, accepted, used, and transmitted to
the credit of the·bank.   The petition then avers a default
in payment and the insolvency of the makers, and prays
judgment upon the contracts of guaranty.   The bank ad-
mitted the execution and delivery of the notes and mort-
gage, but denied the default ·of payment.   This defense
was, however, waived on the trial.   As a second defense it
denied the indorsement or transfer of the notes to the bank
or that the bank was ever the owner thereof; denied its
execution of the guaranty ; denied that it authorized ˙the
guaranty to be executed, and denied the payment of any
money by the plaintiff to the bank.   It then alleged that
Bostwick, who is shown to have been the president of the
bank, without any right or authority and solely for the
accommodation of a partnership of which he, Paul, and
the makers of the notes were all members, wrote the trans-
fer and guaranty upon the notes and thereby forged·the
signature of the bank.   As a third defense substantially
the same allegations are repeated and·the defense of *ultra
vires* set up.   There was a fourth defense pleaded, but it
was evidently abandoned in the district court and has not
been referred to in the argument here.

The evidence on the part of the plaintiff tended to show
that the notes and mortgage were made and delivered to
Paul in payment for an interest in a brick yard; that Paul
was then indebted to the bank in the sum of about $7,000,
$5,000 of which seems· to have grown out of the brick
yard business, but constituted a debt which Paul testifies
he had individually assumed.   Bostwick, the president of
the bank, took the notes and mortgage, Paul having in-
dorsed the notes, and sold them to the plaintiff, writing the
guaranty thereon before their transmission.   The payment
was made by two drafts of the National Bank of Com-

merce of Kansas City upon the National Bank of the Republic of New York. Each was drawn to the order of the defendant bank. Each draft bears the following indorsement:

"Pay to the American Exchange Bank, New York, or order, for collection account of City National Bank, Hastings, Nebraska.          J. M. FERGUSON,
                                        " Cashier."

Ferguson was cashier of the defendant bank. He testifies he did not place the indorsement upon the drafts, and that he never saw them before the trial, but that it was not his duty to make such indorsements; that they were generally made by the remittance clerk. The drafts were paid, and from the proceeds Paul's debt to the bank was canceled and the remainder passed to his credit. The method of bookkeeping pursued in order to accomplish this result is left doubtful by the evidence; but the evidence is uncontradicted that this result was reached. Subsequently one note of the series was paid plaintiff in a draft through the City National Bank. A letter signed by Bostwick, indicating that the bank paid it, was excluded from evidence.

The theory of the plaintiff is that the guaranty was within the scope of the bank's authority and that of the president; but if not so, plaintiff having adopted the benefit of the transaction by receiving the proceeds in satisfaction of Paul's debt, Bostwick's acts were ratified. The theory of the defendant is that the arrangement was a scheme between Bostwick, the makers, and the payee of the notes, constituting the brick company, to obtain money; that the bank never owned the notes, and that the president's act was not within the scope of his authority, but amounted to a forgery committed by him while acting individually, and that the guaranty was in any event a pledge of the bank's credit and *ultra vires*.

From *Rich v. State Nat. Bank of Lincoln*, 7 Neb., 201, we quote the following: "As a [general] rule, the officers of

a bank are held out to the public as having authority to act according to the usage and course of business of such institutions, and their acts, within the scope of their authority, bind the bank in favor of third persons having no knowledge to the contrary." And it may also be laid down as a rule, that "no officer of a bank can bind it by a promise to pay a debt which the corporation does not owe, and was not liable to pay, unless the bank authorized or has ratified the act."

In *People's Bank v. National Bank*, 101 U. S., 181, one Pickett made his notes for $50,000, payable to his own order, indorsed them and delivered them to the National Bank to be negotiated to the plaintiff. The vice president of the National Bank, with the knowledge and consent of the president and cashier, but without any authority from the board of directors, or from a majority of them as individuals, transmitted the notes to the plaintiff with a written guaranty signed by himself. The plaintiff's account with the defendant was debited with $50,000 on account of the notes. At the same time Pickett's paper held by the defendant was canceled to the same amount. It will be observed that in all its essential features this case was similar to the one under consideration according to plaintiff's theory of the facts. The language of Mr. Justice Swayne in that case is therefore entirely appropriate to this and, so far as it concerns the law of the case, we quote it entire in lieu of an original discussion : "The national banking act (Rev. Stats., 999, sec. 5136) gives to every bank created under it the right 'to exercise by its board of directors, or duly authorized agents, all such incidental powers as shall be necessary to carry on the business of banking, *by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt*, by receiving deposits,' etc. Nothing in the act explains or qualifies the terms italicized. To hand over with an indorsement and guaranty is one of the commonest modes of transferring the securi-

ties named. Undoubtedly a bank might indorse, 'waiving demand and notice,' and would be bound accordingly. A guaranty is a less onerous and stringent contract than that created by such an indorsement. We see no reason to doubt that, under the circumstances of this case, it was competent for the defendant to give the guaranty here in question. It is to be presumed the vice president had rightfully the power he assumed to exercise, and the defendant is estopped to deny it. Where one of two innocent parties must suffer by the wrongful act of a third, he who gave the power to do the wrong must bear the burden of the consequences. The doctrine of *ultra vires* has no application in cases like this. (*Merchants Bank v. State Bank*, 10 Wall. [U. S.], 604.) All the parties engaged in the transaction and the privies were agents of the defendant. If there were any defect of authority on their part, the retention and enjoyment of the proceeds of the transaction by their principal constituted an acquiescence as effectual as would have been the most formal authorization in advance, or the most formal ratification afterwards. These facts conclude the defendant from resisting the demand of the plaintiff. (Wharton, Agency, sec. 89; Bigelow, Estoppel, 423; *Mississippi & M. R. Co. v. Howard*, 7 Wall. [U. S.], 392; *Kelsey v. National Bank of Crawford County*, 69 Pa. St., 426; *Steamboat Co. v. McCutchen*, 13 Pa. St., 13.) A different result would be a reproach to our jurisprudence." The case involving, to a certain extent, the construction of the national banking act, the decision referred to is probably binding upon this court; but whether it is or not, we accept it as a correct statement of the law.

The errors assigned relate to the admission and exclusion of evidence and to the giving and refusal of instructions. Some are not assigned with sufficient definiteness to permit a review. In ruling upon the evidence the trial court seems to have proceeded upon the theory that the plaintiff had no right to rely upon the apparent authority of Bost-

wick, and that it was not competent to show a ratification by subsequent acts. In instructing the jury he placed before it only the defendant's theory of the case and assumed that there was evidence to show that the guaranty was merely for the accommodation of the parties to the notes and not within the line of the bank's business. The instructions asked by plaintiff and refused were based upon competent testimony tending to establish his theory as we have outlined it, and were in language receiving direct support from the case of *People's Bank v. National Bank*, 101 U. S., 181. In failing to submit the case in this aspect to the jury the court erred.

REVERSED AND REMANDED.