CLARKSON, J., dissenting.
On 26 February, 1924, J. H. Mackie, of Yadkin County, North Carolina, executed his note, due six months after date, payable to Southern States Finance Company, of Charlotte, N.C. or order, for $16,500, negotiable and payable at the Peoples National Bank of Winston-Salem, N.C. This note, together with a subscription for 1,650 shares of stock of the Southern States Finance Company, was delivered by J. H. Mackie to S. F. Penry, who had, as agent for the Finance Company, solicited the said subscription. The consideration for the note was the purchase price of the stock. It was agreed between Mackie and Penry that if the subscription and note were not accepted by Southern States Finance Company, and if the certificates were not issued, the note should be returned to Mackie. Thereafter, Penry submitted the subscription and the note to Southern States Finance Company at Charlotte.
The Southern States Finance Company communicated by telephone with Col. W. A. Blair, vice-president of the Peoples Bank of Winston-Salem, *Page 70 
N.C. in order to secure information upon which to determine whether or not it would accept said note, and issue the certificates for the stock to J. H. Mackie. After several phone conversations with Colonel Blair, relative to Mackie and the note, then in its possession, Southern States Finance Company endorsed the note, and sent it by Penry to plaintiff at Winston-Salem. Plaintiff issued certificates of deposit, aggregating $16,500, payable to Southern States Finance Company, and delivered same to Penry. Penry thereupon delivered the note, with the endorsement of Southern States Finance Company, to plaintiff. Penry then took the certificates of deposit to Charlotte and delivered same to Southern States Finance Company. The Finance Company thereupon issued certificates of stock, in accordance with his subscription, to J. H. Mackie. These certificates of stock were delivered by Penry to Mackie, at his home in Yadkin County. The certificates of deposit have been paid by plaintiff.
This is an action by plaintiff, as holder of the note, to recover of J. H. Mackie, as maker, and of defendant, Southern States Finance Company, as endorser, the sum of $16,500 and accrued interest. No answer was filed by defendant, J. H. Mackie.
Southern States Finance Company, in defense of plaintiff's action upon said note, says:
1. "That on and for some time prior to 26 February, 1924, plaintiff, Peoples National Bank of Winston-Salem, N.C. was the regular depository of this defendant in which defendant kept on deposit a considerable portion of its funds, and the vice-president of plaintiff, who has active charge of its affairs, was a member of the advisory board of this defendant, as representative of the plaintiff bank, and according to the course of business of this defendant, it submitted to the plaintiff bank and to its said vice-president all paper which it took in the regular course of business from the vicinity in which plaintiff bank did business, and this defendant was accustomed to rely and did rely, upon the information given it by the plaintiff bank and its said vice-president with regard to the financial standing and responsibility of persons in the neighborhood of plaintiff bank from which this defendant purchased all papers and securities, and for the service and information rendered by the plaintiff and its said vice-president, the plaintiff was duly compensated by this defendant, and this defendant had a right to rely upon information received by it from the plaintiff."
2. "That the plaintiff, well knowing the confidence reposed in it by this defendant, abused the confidence of this defendant in the matter of the endorsement hereinbefore described, and as this defendant is informed and believes, conspired and agreed with certain persons against *Page 71 
whom it held insolvent papers to obtain security for a certain unsecured indebtedness at the expense of this defendant, and with intent to cheat and defraud this defendant, made false and fraudulent representations to this defendant, and obtained from defendant the endorsement to the note of J. H. Mackie, as hereinafter more fully set forth."
3. "That prior to the said 26 February, 1924, the plaintiff held worthless and unsecured paper made or endorsed by Webb S. Alexander, J. H. Mackie, F. W. Hanes and others, aggregating approximately $16,500; that plaintiff being desirous of obtaining some security for the said worthless indebtedness, entered into an agreement with the said Alexander and others, as defendant is advised and believes, by the terms of which the said Alexander and others were to sell to the said Mackie $16,500 of stock in the Southern Finance Company, which was to be placed by Mackie as collateral to a note of the said Hanes, which was to be given in lieu of the aforesaid worthless paper; that the plaintiff was to induce this defendant to issue the said stock for the worthless note of Mackie by representing to this defendant that the said Mackie was solvent and that his said note was good, and was to obtain the endorsement of this defendant on said note by said representation, and by offering to discount same for defendant."
4. "That in pursuance of the aforesaid fraudulent scheme and conspiracy, the said Webb S. Alexander and certain of his associates did obtain the $16,500 note sued on in this action from the said J. H. Mackie, and thereupon presented same, together with a stock subscription for $16,500 stock, to this defendant; that before this defendant would accept said note, it made inquiry of the plaintiff as to the solvency and responsibility of the said J. H. Mackie and was assured by plaintiff that the said J. H. Mackie was solvent and responsible and that this defendant would be safe in taking said note in payment of his stock subscription, and agreed that if this defendant would take said note, plaintiff would purchase same from the defendant upon its endorsement; and that relying upon the said representations made to this defendant by the plaintiff, as aforesaid, this defendant issued its stock to the said J. H. Mackie in the sum of $16,500 and endorsed the note sued on to plaintiff; that this defendant thereupon delivered the said stock and the said note to one S. F. Penry, who was acting in concert with the plaintiff and the said Webb S. Alexander, to the end that the said note might be delivered to the plaintiff and that the stock might be pledged as security to the said note, defendant assuming and believing that the said stock would be placed with plaintiff as security for the note given for the purchase price of said stock, but this defendant has recently learned that the plaintiff did not place the said stock as security to the said note given for its purchase price, as aforesaid, but allowed same to *Page 72 
be placed as security for a note of one F. W. Hanes, which note was given to take up the aforesaid worthless paper given by Mackie, Hanes, Webb S. Alexander and others, as aforesaid, and that plaintiff thereupon held the said $16,500 note signed by defendant Mackie without any security whatever for the payment of same, except the endorsement of this defendant obtained in the fraudulent manner aforesaid."
5. "That at the time plaintiff obtained from this defendant its endorsement on the said promissory note, the said J. H. Mackie was not solvent or responsible, and his credit was not good for $16,500, but, on the contrary, he was involved in debt and insolvent, and his note was worthless, as the plaintiff then and there well knew; that the plaintiff made the aforesaid false representations as to the solvency and responsibility of the said J. H. Mackie for the purpose of deceiving and defrauding this defendant, and by means thereof did deceive and defraud and obtained from this defendant the issuance of said stock and endorsement aforesaid, all to the great damage of this defendant and in breach of the trust and confidence reposed by this defendant in the plaintiff."
6. "That in the manner and way aforesaid the plaintiff obtained from the defendant its endorsement on the worthless note of J. H. Mackie for the sum of $16,500, and also obtained $16,500 of the stock of this defendant as collateral security to the aforesaid worthless loans which it held and for which the practically worthless note of F. W. Hanes, secured by the aforesaid stock, was exchanged as aforesaid; that after obtaining the said stock of the said Mackie, as this defendant is informed and believes, plaintiff proceeded to allow the said Webb S. Alexander to sell said stock or a large portion thereof, and applied the proceeds on the said note of Hanes given for said worthless indebtedness."
7. "That it was understood and agreed at the time the said stock was issued to J. H. Mackie, that same should be pledged as collateral to the note of the said J. H. Mackie purchased by the plaintiff as aforesaid, and this defendant is informed and believes that the said J. H. Mackie did put up said stock as collateral to said note and this defendant avers that this plaintiff, by relinquishing its rights against said stock as security to this note, has discharged this defendant from liability on its endorsement."
Plaintiff, in its reply to the answer, denied the allegations set out therein and "avers upon information and belief that there was some arrangement by which Col. W. A. Blair, who was vice-president of plaintiff, would answer, when requested, inquiries about notes and mortgages on automobiles which might be purchased by the Southern States Finance Company from makers residing in the city of Winston-Salem *Page 73 
only as to the reputation and general standing of the persons inquired about, for which he was to receive a small amount in comparison for his services, when the particular note was paid off to or canceled by the Southern States Finance Company; that this plaintiff had nothing to do with the private arrangement between Co. W. A. Blair and the Southern States Finance Company, and if any consideration was promised or paid for such information as was given by Col. W. A. Blair, this plaintiff received no part thereof."
The issues submitted to the jury, with answers thereto, are as follows:
"1. Was the endorsement of the defendant, the Southern States Finance Company, upon the note described in the complaint, procured by means of false and fraudulent representations of the plaintiff, the Peoples National Bank, through its officers or agents, with intent to cheat and defraud this defendant, as alleged in the answer? Answer: Yes.
"2. Was the endorsement of the defendant, the Southern States Finance Company, upon the note described in the complaint, procured by means of conspiracy to defraud the said defendant, made and entered into by the plaintiff, the Peoples National Bank, through its officers or agents with Webb S. Alexander and others, as alleged in the answer? Answer: No.
"3. Did the plaintiff, the Peoples National Bank, through its officers or agents, agree with the defendant, the Southern States Finance Company, through its officers or agents, that the stock issued by the defendant to J. H. Mackie should be pledged as collateral to the note described in the complaint; and, in violation of such agreement, fail to hold said stock as such collateral, as alleged in the answer? Answer: Yes.
"4. What amount, if any, is the plaintiff, the Peoples National Bank, entitled to recover of the defendant, the Southern States Finance Company? Answer: Nothing."
Upon the verdict judgment was rendered that plaintiff recover nothing, in this action, of defendant, Southern States Finance Company, and that said company go without day and recover of plaintiff its costs. From this judgment plaintiff appealed to the Supreme Court, assigning errors based upon its exceptions as set out in the case on appeal.
Defendant admitted, in its answer, the execution by J. H. Mackie, and the endorsement by the Southern States Finance *Page 74 
Company, of the note set out in the complaint. This note contains the following provision: "Each drawer, endorser, or surety hereby severally waives presentment for payment, notice of protest, or of nonpayment by principal, and hereby agrees to any extension of time given to them or either of them." The note bears the following endorsement: "Pay to the order of Peoples Bank at Winston-Salem, N.C. Southern States Finance Company. J. R. Cherry, Treas." It is admitted that the principal has not paid the note; defendant, Southern States Finance Company, by reason of its endorsement, is liable to plaintiff on the note, unless the defense set up in its answer relieves it of such liability. By its endorsement and waiver it engaged that upon dishonor by failure of the principal to pay the note when due, it would pay the same. C. S., 3047. The burden of establishing, by evidence, the facts relied upon in said defense is upon the Southern States Finance Company.
J. R. Cherry, witness for defendant, testified: "I am secretary and treasurer of the Southern States Finance Company. I had a conversation with Colonel Blair over the phone prior to 6 March, 1924, before writing a letter to him of that date. I called the Peoples Bank of Winston-Salem and asked for Colonel Blair. I told Colonel Blair that Mr. Penry had called on us in behalf of a party living in the vicinity of Winston-Salem who wanted some of our stock; that we knew nothing of this party and wanted him to get a line on the party for us. I told Colonel Blair that the man in question was J. H. Mackie, of Yadkin. He said he knew Mr. Mackie; he had not been in close touch with him for some time, but he knew of two lawyers in Winston-Salem who had recently done some work for him. He was sure he could get a good report from them. Colonel Blair said that these two lawyers were Mr. Hall and Mr. Holton. He said he would get a report and call us later. At the expiration of about an hour and a half Colonel Blair called back and said he had been out to see Mr. Hall and Mr. Holton; that they both said that Mr. Mackie was possessed of considerable property, was a man of good standing, of good reputation; that he had the reputation of meeting his contracts as made.
"We did not handle the proposition at that time. Later in the afternoon we called Colonel Blair again, and told him that there was another phase of the transaction we hadn't got straight; that we understood his bank was going to purchase this note. He said, `Well, I will have to look further into that phase of it.' He called us back later, and said he would purchase the note. We endorsed the note and sent it to Winston-Salem by Mr. Penry. That was on Monday, 3 March, 1924. On said day I wrote a letter addressed to `Col. W. A. Blair, vice-president, Peoples National Bank, Winston-Salem, N.C.' as follows: *Page 75 
"`Today we have endorsed a note to J. H. Mackie, of Yadkinville, in the sum of $16,500 to the order of your bank, which was given to us for a like amount of common stock in this company. The purpose of this letter is to insure this company against any possible miscarriage of certificates of deposit on your bank in lieu of said note and which we would thank you to issue to us as follows: Seven certificates for $2,000 each, and the balance of $2,500 in one certificate.
"`The party making this purchase is undoubtedly a responsible one, but in view of his residence being somewhat removed from the place of our location, we thought it best to take this means of apprising you of the transaction and in making the request that you send the certificates for this note when presented, and which we understand will be done through Mr. Penry.'
"On 6 March, 1924, we received letter from Colonel Blair, of that date, acknowledging receipt of my letter. On said date I wrote Colonel Blair, vice-president, Peoples National Bank, as follows:
"`Since hearing from you over the long-distance telephone today we had a call from Mr. Penry bringing in the certificates of your bank for $16,500 in lieu of the note for the same amount made by J. H. Mackie.
"`In view of the fact that your bank has issued the certificates and because of the favorable information you have received about Mr. Mackie's responsibility, we have concluded that you were satisfied in the matter and accordingly we have issued the stock to Mr. Mackie. We will thank you to confirm our understanding from you that you regard the paper as being all right.'
"The Peoples National Bank was a member of our Advisory Bank, and Colonel Blair of the bank was the officer in the bank who was to furnish us information. The advisory board contract was in writing. The Peoples National Bank was our depository in Winston-Salem. We carried funds on deposit, and the bank made installment collections as they became due.
"There was no conversation between me and Colonel Blair as to what was to be done with the certificates of stock issued to Mr. Mackie. I told Colonel Blair that the stock was to be held by his bank behind the Mackie note until the note was paid. I mean by `behind the Mackie note,' in a measure collateral. I suppose you would say as a collateral note. It was to be held as security to the note; the note, however, was not a collateral note. I gave the certificates issued to Mackie to Penry to take to the bank."
There was evidence offered by defendant tending to show that in February, 1924, J. H. Mackie, F. W. Hanes, Webb S. Alexander and others *Page 76 
who had been associated with them in business transactions, were indebted to plaintiff as makers or endorsers on various notes aggregating $15,590.56, held by plaintiff. That these notes were due and that plaintiff had brought suit in the Superior Court of Forsyth County to recover the amounts due on said note. All of these notes were paid on 10 March, 1924, from the proceeds of a note for $16,500 dated 29 February, 1924, executed by F. W. Hanes and payable to plaintiff. This note was secured by the certificates of stock issued by defendant to J. H. Mackie. These certificates were delivered by Mackie to Hanes, who attached same to his note and then delivered his note with said certificates attached thereto, to Alexander. Alexander delivered the note and certificates to Colonel Blair, vice-president of plaintiff, who accepted the same in payment of the notes of Mackie, Hanes, Alexander and others held by plaintiff. A payment has been made on the Hanes note from the proceeds of the sale of the certificates deposited as collateral thereto.
There was also evidence offered by defendants tending to show that in February, 1924, and for some time prior thereto, J. H. Mackie was insolvent; that many judgments aggregating a large sum had been docketed against him in Yadkin County; that executions on some of these judgments had been issued and returned unsatisfied; that he was a man of good character and reputation; that he was in possession of considerable real estate of large value, the title to which was in his wife and children. He was at one time treasurer of Yadkin County. Both Messrs. Holton and Hall, as witnesses for defendant, testified that in February, 1924, Colonel Blair saw them on the streets of Winston-Salem, and asked each of them as to the general character of J. H. Mackie; that each told Colonel Blair that Mackie was regarded as a man of good character; that neither of them told Colonel Blair that Mackie was solvent.
There was also evidence that the certificates of stock issued to J. H. Mackie by the Southern States Finance Company were delivered to Mackie at his home in Yadkin County by S. F. Penry, together with a letter dated 6 March, 1924, signed by the president of defendant company and containing the following paragraph:
"We are pleased to extend to you a hearty welcome as a stockholder in this corporation, having just received your subscription for $16,500 worth of our common stock, which we are sending to you with this letter."
There was much additional evidence relied upon by defendant to sustain its contentions. Plaintiff offered evidence tending to contradict witnesses for defendant in many respects and to rebut inferences which *Page 77 
defendant contends that the jury might draw from all the evidence. We do not deem it necessary for a decision in this case to set out this evidence.
Plaintiff assigns as error the refusal of the court to allow its motions, made first at the conclusion of defendant's evidence, and upon being then overruled, renewed at the conclusion of all the evidence, for judgment as of nonsuit upon defendant's defense to its action on the note, set out in the complaint, and for judgment, upon the admissions in the pleadings, that plaintiff recover of defendant in accordance with its prayer.
The gist of the defense, relied upon by defendant, and submitted to the jury upon the first and second issues, is the allegation that plaintiff, in violation of the confidence which it knew defendant had in plaintiff, by reason of their relations, and with intent to cheat and defraud defendant, made false and fraudulent representations to defendant, as to the solvency and financial condition of J. H. Mackie, and thereby caused defendant to issue certificates for its common stock worth $16,500, and to accept in payment therefor the note of J. H. Mackie for that sum.
Plaintiff is a corporation, organized and doing business under the National Bank Act; it has only such power as is conferred by that act. It has, pursuant to said act, power "to exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security, and by obtaining, issuing and circulating notes according to the provisions of this title. "National Banks have no powers beyond those expressly granted or those fairly incidental thereto. Westervelt v. Mohrensticher, 34 L.R.A. (N.S.), 477; 76 Fed., 118; Myers v. Exchange National Bank, L.R.A., 1918A 67, 96 Wn. 244, 164 P. 95; Commercial Bank and Trust Co. v.Citizens Trust G. Co., 45 L.R.A. (N.S.), 950, 153 Ky. 566,156 S.W. 160; Commercial National Bank v. Price, 82 Fed., 802. A national bank has no power to engage in the business of furnishing to depositors or to others gratuitously or for compensation, direct or indirect, information as to the solvency, or condition or reputation, financial or otherwise, of persons, firms or corporations. An agreement to furnish such information is ultra vires; one, with whom a national bank may have entered into such an agreement, is presumed, conclusively, to know that he acquires no rights thereby, which may be enforced against the bank. Every one dealing with a national bank does so with notice of, and subject to, the powers conferred, and the limitations imposed by the law of its creation. Flannagan v. California *Page 78 National Bank, 23 L.R.A., 836, 56 Fed., 959. A corporation, organized and engaged in the banking business, whether under the National Bank Act or under the laws of the State, can assume no liability, without acquiring assets to offset the same. The interests not only of depositors and stockholders, but also of the public, can be safeguarded only by a rigid and consistent enforcement of this salutary rule. It has been held by this Court, both upon principle and upon uniform authority to that effect, that a banking corporation cannot lend its credit to another by becoming surety, endorser or guarantor for him. Quarries Co. v. Bank, 190 N.C. 277. A national bank cannot lend its credit to another by becoming surety, endorser or guarantor for him. Merchants Bank v. Baird, 17 L.R.A. (N.S.), 526, 160 Fed., 642. It may, however, guarantee the payment of commercial paper as incidental to its power to buy and sell the same.Thomas v. City National Bank, 24 L.R.A., 263, 40 Neb. 501,58 N.W. 943. It will be held liable on an endorsement or guaranty, to the extent, at least, of the consideration, if any, which it has received. Appleton v. Citizens Central National Bank, 32 L.R.A. (N.S.), 543, 190 N.Y. 417, 83 N.E. 470; Trust Co. v. Trust Co.,188 N.C. 766, 125 S.E. 536, 37 A.L.R., 1368. There is evidence in this record that the Peoples National Bank of Winston-Salem was a member of the advisory board of defendant, Southern States Finance Company. There is no evidence, however, tending to show what obligations plaintiff undertook to assume by the contract establishing that relation. The contract is in writing; it was not offered in evidence. There is evidence that defendant was a depositor of plaintiff; no obligation, however, arose from this relation on the part of plaintiff to furnish information to defendant as to the solvency or financial condition of Mackie. There was no relation between plaintiff bank and defendant which imposed upon the plaintiff any duty to answer inquiries about J. H. Mackie.
There is evidence that Colonel Blair, who was vice-president of plaintiff bank, had been accustomed to answer inquiries made by defendant relative to persons residing in Winston-Salem, or its vicinity, in whose notes or other obligations defendant was interested as a prospective purchaser. Some arrangement had been made by defendant with Colonel Blair for this service. There is no evidence, however, that Colonel Blair, in rendering this service to defendant, was acting or undertaking to act for plaintiff. Plaintiff had no interest in these persons, or in the notes which defendant proposed to purchase. Colonel Blair was not serving or undertaking to serve the bank, in answering defendant's inquiries. There is no evidence that at the time of the inquiry by defendant relative to Mackie, plaintiff had any interest in the note which Mackie had executed, payable to the order of defendant. In answering the inquiry *Page 79 
relative to Mackie, Colonel Blair was serving defendant and not the plaintiff. It was held in Taylor v. Commercial Bank, 62 L.R.A., 783,174 N. Y., 181, that a bank cashier is not acting within the scope of his authority in giving information as to the value of notes executed by customers of the bank so as to render it liable in case the statements prove to be untrue. See Bank v. Smith, 77 Fed., 129.
The distinction between the acts of Colonel Blair when acting for defendant and when acting for plaintiff, is made clear by the testimony of Mr. Cherry, secretary and treasurer of defendant. When asked to secure information as to Mackie, Colonel Blair proceeded to act at once. When asked if the bank would purchase the note, he replied: "Well, I will have to look further into that phase of the matter." There is evidence that before giving a reply to the latter inquiry, he submitted the matter to the finance committee of the plaintiff, and replied only after the committee had authorized the purchase of the note.
We must therefore hold that upon all the evidence appearing in this record, plaintiff cannot be held liable for any loss or damage which defendant may have sustained by reason of the falsity of any representation which Colonel Blair may have made with respect to J. H. Mackie or by reason of his failure to disclose to defendant any facts within his knowledge with respect to Mackie. Defendant having failed to sustain its allegation in this respect, must fail in its defense involved in the first and second issues.
There is no evidence to sustain an affirmative answer to the third issue, which involves the allegation that plaintiff agreed to hold the certificates of stock issued to Mackie as collateral security for his note, transferred by the endorsement of defendant to plaintiff. These certificates were delivered to J. H. Mackie, and not to the plaintiff, by S. F. Penry, agent of defendant. The note was not in the form of a collateral note; the certificates were not delivered to plaintiff by defendant, and defendant's letter to J. H. Mackie, signed by its president, is evidence contradicting the contention of defendant with respect to the third issue.
There was error in the refusal of the court to allow plaintiff's demurrer to defendant's evidence offered to sustain its defense and submitted to the jury on the first, second and third issues. Upon all the evidence, the court should have directed a verdict in favor of plaintiff on all the issues. Lester v. Harward, 173 N.C. 83. There must therefore be a
New trial.
CLARKSON, J., dissenting. *Page 80