## CITIZENS' NAT. BANK OF LUBBOCK v. IVEY et al.

Court of Civil Appeals of Texas. Amarillo. May 21, 1934.

Rehearing Denied June 18, 1934.

E. L. Klett, of Lubbock, for appellant.

W. P. Walker, of Crosbyton, for appellees.

HALL, Chief Justice.

The appellee Ivey sued D. E. Fowler as maker and the appellant bank as guarantor and indorser upon notes 9, 10 and 11 of a series of notes executed in the sum of $600 each, dated December 30, 1921, payable to the order of W. L. Pattillo on or before the 1st day of January of 1933, 1934, and 1935, respectively, with interest from date at 8 per cent. per annum. The notes are secured by a vendor's lien upon 134½ acres of land in Crosby county.

The bank answered by general demurrer, general denial, and denied under oath that it executed or caused to be executed by its agent or otherwise any contract of guaranty or indorsement, and denied that there was any consideration for said contract.

There was a written transfer of the notes from the bank to Ivey, executed on the 20th day of January, 1930, by France Baker, president. The transfer describes the notes and the land for which they were executed as part of the consideration, and contains this recital: "Therefore, know all men by these presents: That Citizens National Bank, the payee and owner and holder of said notes, for and in consideration of the sum of Ten and no/100 dollars to it in hand paid by L. J. Ivey have sold, transferred and conveyed and do hereby sell, transfer and convey unto the said Ivey, of the County of Lubbock, State of Texas, the said notes and said lien and all liens and titles held by it in and to said land."

There was introduced in evidence a letter, dated January 13, 1930, addressed to appellee Ivey at Slaton, Tex., signed by France Baker, president of the appellant bank, as follows: "If you should decide that you want the $3,000.00 worth of land notes I was telling you about on the farm south of Lorenzo, you can let me know any time. There are five of these notes for $600.00 apiece, drawing eight per cent interest per annum and the Bank here would guarantee you prompt payment of interest and principal when due."

There was a trial to a jury, but the court directed a verdict in favor of Ivey for the amount of the principal, interest, and attorney's fees, aggregating $2,283.60. From that judgment this appeal is prosecuted.

By the first two propositions the appellant insists that the trial court erred in overruling the bank's special exception with reference to guaranty alleged by plaintiff, because there is no allegation that the offer contained in the letter written by the president of the bank to the plaintiff on January 13, 1930, to the effect that the bank "would guarantee" payment, was ever accepted by the plaintiff or ever became a part of the written contract subsequently entered into and further the court erred in overruling the bank's special exception upon the ground that plaintiff failed to allege that said letter constituted a part of his cause of action.

These contentions are without merit. The letter received from Baker offering to guarantee the payment of the notes if the appellee would purchase them is the basis of the suit. Plaintiff alleges that he was induced by this letter to purchase the three notes; that he paid a valuable consideration for them; that the bank indorsed each of the notes and guaranteed the payment thereof at maturity; that it received the money which plaintiff paid as a consideration for the notes; that thereafter the bank and its officers paid to the appellee notes Nos. 6 and 7, both principal and interest, together with the interest on the other three notes up to January 1, 1932.

The rule is that, if a contract is already in existence and its payment is guaranteed by a third party, no notice of the acceptance of the guaranty is necessary. Shropshire v. Smith (Tex. Civ. App.) 37 S. W. 174; Austin v. Guaranty State Bank (Tex. Civ. App.) 300 S. W. 129, 132; Hart v. Wynne (Tex. Civ. App.) 40 S. W. 848; 1 Brandt, Suretyship, § 193.

It is also the well-established rule that formal notice of the acceptance of an offer of guaranty is not necessary where the guarantee acts on it and the guarantor has information of such action. American Surety Co. v. Whitehead (Tex. Com. App.) 45 S.W.(2d) 958; 21 Tex. Jur. 158, § 27; Friedman v. Peters, 18 Tex. Civ. App. 11, 44 S. W. 572.

The plaintiff alleges that, after the receipt of the letter offering to guarantee the payment of the notes if he would purchase them, he went to the bank, and the deal was closed with two of the bank's officials, and he paid them $3,000 consideration; that being the face value of the notes. This is a sufficient allegation of an absolute guaranty. It is sufficiently alleged that he purchased the notes at the request of France Baker, the president of the bank, and that practically all of the active officers of the bank had actual notice of his action in closing the deal. Under such circumstances no other notice of acceptance was necessary. 28 C. J. 903, §§ 23, 24, 25, 26; 12 R. C. L. 1068–1070; 21 Tex. Jur. 155, § 23; Id. 157, § 25.

What has been said disposes of the third and fourth propositions.

By its fifth proposition the appellant bank insists that the court erred in permitting France Baker, the president, to testify with reference to the transaction in response to the question as follows: "What conversation or conversations did you have with any of the persons named in response to interrogatory No. 34 prior to or at the time of the transfer of the said Fowler notes from the said bank to L. J. Ivey, giving the substance of such conversations and stating with whom?" Answer: "On date prior to the date of sale and transfer of the Fowler notes to Mr. Ivey, he came into the bank. I told him about said notes, that we would like to cash them in to him as they were long maturity

for the Bank to carry. I then told Mr. W. C. Stephens, active vice president, who was present while Mr. Ivey was in there, that we could probably sell the Fowler notes to Mr. Ivey on our guarantee of payment, as the notes matured, and discussed the matter in detail with him, to which he agreed and told Mr. Ivey that if he bought the notes the Bank would pay him the principal and interest as they became due. Mr. Stephens also told him the same. Also I told Mr. Hardwich, the Secretary of the Board of Directors, how the deal was and he attested the transfer as Secretary of the Board. I told Mr. Arnet that we could get out of the bank another set of the land notes we took in on the Dalton deal and that Mr. Ivey would be back to the bank next day and let us know if he would purchase them or not."

The objection was made to this testimony that the statements are not alleged as a basis for recovery and because there is no allegation or evidence that these officers were authorized to enter into any kind of guaranty of payment. This testimony was admissible in the first place as part of the res gestæ. It was also admissible upon the issues of estoppel and apparent authority of the officers and of the bank to guarantee the payment of the notes.

Further objection was made to the answers of Baker to the thirty-sixth and thirty-seventh interrogatories, in which he testified that, prior to and at the time of the transfer of the notes from the bank to Ivey, the latter had a conversation with W. O. Stephens, active vice president of the bank, who told Mr. Ivey the bank would guarantee the payment of the notes and interest as they matured. For the reasons stated above, this testimony was also admissible.

The remaining propositions challenge the action of the court because (1) the president, Baker, had no authority to guarantee the payment of the notes; (2) it was not shown that the board of directors had authorized Baker or Stephens or any other officer to guarantee their payment; and (3) because the proceeding was ultra vires and void.

We think these contentions are without merit. 12 USCA § 24, relating to the corporate powers of national banks, authorizes its board of directors to regulate the manner in which its property shall be transferred, its general business conducted, and the privileges granted to it by law exercised. It authorizes the exercise by its duly authorized officers of *f*. ᴜch incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes and other evidences of debt. There is authority to the effect that the president of a national bank will be presumed to have authority to guarantee notes of third parties held and sold by the bank where it is not shown that the purchaser had any notice to the contrary. Thomas v. City National Bank, 40 Neb. 501, 58 N. W. 943, 24 L. R. A. 263.

It is held in People's Bank v. Manufacturers' National Bank, 101 U. S. 181, 25 L. Ed. 907, that, where the vice president of a national bank contemporaneously with the sale of the notes of certain other bank guaranteed their payment, the latter bank could rightfully presume, without inquiry, that the vice president had authority to exercise the guaranty, and this case expressly announces the doctrine that a national bank may indorse or guarantee negotiable paper on transferring or discounting it in the ordinary course of business. This doctrine has been reasserted in Commercial National Bank v. Pirie (C. C. A.) 82 F. 799; Bowen v. Needles National Bank (C. C. A.) 94 F. 925; Id. (C. C.) 87 F. 430; Id., 176 U. S. 682, 20 S. Ct. 1024, 44 L. Ed. 637; Thomas v. City National Bank, 40 Neb. 501, 58 N. W. 943, 24 L. R. A. 263; Farmers' & Miners' Bank v. Bluefield National Bank (C. C. A.) 11 F.(2d) 83, certiorari denied, 271 U. S. 669, 46 S. Ct. 483, 70 L. Ed. 1142.

The record shows that these notes had been purchased by and were owned by the appellant bank prior to the time of their transfer to Ivey. Where all the parties engaged in the transaction were privies and agents of the defendant, if there were any defect of authority on their part, the retention and enjoyment of the proceeds of the transaction of their principal constituted an acquiescence and ratification as effectual as would have been the most formal authorization in advance or the most formal ratification afterwards. These facts conclude the defendant from resisting the demand of the plaintiff. A different result would be a reproach to our jurisprudence. Whart. Ag. § 89; Bigelow on Estop. 423; C., R. I. & P. R. R. Co. v. Howard, 7 Wall. 392, 19 L. Ed. 117; Kelsey v. Bank, 69 Pa. 426; Allis-Chalmers Mfg. Co. v. Citizens' Bank & Trust Co. (D. C.) 3 F.(2d) 316; Dexter v. First Guaranty State Bank et al. (Tex. Civ. App.) 180 S. W. 1172; Farmers' State Bank of Merkle v. First State Bank of Abilene (Tex. Civ. App.) 260 S. W. 664; First Guaranty State Bank of Cross Plains v. Liberty National Bank of

Waco (Tex. Civ. App.) 260 S. W. 660, in which it is said, though a bank president had no authority to negotiate and guarantee payment of certain notes, if the bank ratified the transaction and accepted the benefits thereof, the bank is bound by the terms of the transaction. To the same effect, see 7 C. J. 596; First National Bank v. Greenville Oil & Cotton Co., 24 Tex. Civ. App. 645, 60 S. W. 828. The record shows that Ivey paid $3,000, being the face value of the notes, at the time they were assigned to him, and that he bought them upon the solicitation of Baker, the president of the bank. The written transfer and guaranty imports a consideration, even though the consideration of $3,000 did not really exist. About $2,200 of the money paid them is still in its possession. It has appropriated the proceeds of the sale to its own use and benefit and has not tendered any part thereof into court.

█ We are not prepared to assent to the contention that the act of the bank in guaranteeing the notes which it owned, which were transferred for a valuable consideration, is ultra vires. By express provision of the statute it may transfer its property. Buying and selling negotiable paper is part of the incidental powers and regular business of a bank. But, even if it be admitted that the transaction was ultra vires, the contract being executed on the part of Ivey and the bank having received and appropriated the proceeds, it cannot retain the proceeds and interpose the defense of ultra vires when sued upon its contract.

As said in 3 Supreme Court Law, 2537, § 24: "The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong. Ohio & Miss. Ry. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 695; Union W. Co. v. Murphy's Flat Fluming Co., 22 Cal. 620; Morris & E. R. R. Co. v. R. R. Co., 20 N. J. Eq. 542; Whitney Arms Co. v. Barlow, 63 N. Y. 62 [20 Am. Rep. 504]."

As said in 10 Tex. Jur. 901, § 259: "It is well established that both the corporation itself and anyone dealing with it may be estopped from denying its contractual capacity to engage in the transaction in question. Certainly if the contract be within the general scope of the corporate powers and the prohibition be merely against the mode of its execution it is valid as against the corporation which has received benefits from it in favor of an opposite party who has fully complied with the obligations on his part. Many authorities go further and hold that where the transaction has not been specifically prohibited by statute, the acceptance and retention of a direct benefit from the contract raises an estoppel both against the corporation itself and anyone contracting with the corporation."

Id. § 331, has this discussion of ultra vires: "It appears in the foregoing pages that an ultra vires transaction is not binding on the corporation where it is merely executory but where the contract has been executed by the opposite party and especially where the corporation has accepted and has retained the benefits of the contract, the company is estopped from questioning the transaction as being outside the corporate powers."

█ The bank by absolute guaranty of payment bound itself for the amount due upon each note and interest at the maturity thereof. Whether the indorsement of Baker added anything to the rights of the plaintiff is a matter which we deem unnecessary to discuss at length. Since the bank had agreed to pay the notes as they matured, with interest on the unmatured obligations, and had previously paid the first two notes upon presentation, it is our opinion that the question of notice of nonpayment is not in the case. Ivey testified that he took all of the notes to the bank at the maturity of the first of the five notes on January 1, 1931, and that the first note was then paid, together with the interest due on all of the notes, that he sent the remaining four notes to the bank upon the maturity of the one due January 1, 1932, and that it was paid and all interest due on the others. Afterward he wrote the bank calling its attention to the fact that it was indorser and guarantor on the remaining notes and thereafter on December 21, 1932, the bank's attorneys disclaimed liability on the part of the bank upon the remaining notes. About a month thereafter he drove from his home in Hill county to Lubbock to interview the bank's attorneys, who refused to pay the remaining notes, and thereafter he drove to Shallow Water to see Fowler, the maker, who refused to pay them and told him to file suit. If notice were necessary, this is sufficient.

Under the pleadings and evidence, no other judgment could have been rendered, and the court did not err in directing a verdict.

**The judgment is affirmed.**